[Civ. No. 110.    Third Appellate District.—December 1, 1905.]

E. RENFRO, Respondent, v. FRESNO CITY RAILWAY COMPANY, Appellant.

NEGLIGENCE—INJURY TO PASSENGER ALIGHTING FROM ELECTRIC RAIL-WAY CAR—SUDDEN JERK—PRESUMPTION—BURDEN OF PROOF.—In an action for injuries sustained by a passenger while alighting from an electric railway car, as the result of a sudden jerk, where the evidence showed that the car had slowed down and nearly stopped at the end of its road, when plaintiff started to get off, and that he had hold of the stanchion, with a view to alighting, and that the sudden jerking of the car was so violent as to compel plaintiff to release his hold and to throw him violently to the ground, he was not required to explain the cause of the sudden jerk, but the evidence was sufficient to raise a presumption of negligence in the operation of the car, and the burden of proof was cast upon the railway company to rebut such presumption to the satisfaction of the jury.

ID.—ORDINARY COURSE OF THINGS—GROUND OF PRESUMPTION AGAINST PROPER CARE.—When an event takes place which, according to the

ordinary course of things, would not happen, if proper care was exercised, it is presumed that such care was not exercised, and it cannot be said as matter of law that, according to the ordinary course of things, when a car has reached its terminus, and is slowing down, and nearly at a stop, the car is likely to suddenly and without warning accelerate its speed to such extent as to throw a passenger violently to the ground who was holding to the stanchion and preparing to alight. In such case, the character of the injury, resulting from the sudden jerking of the car as a cause, might well tend to show that but for defendant's negligence it would not have happened.

ID.—HARMLESS ERROR IN INSTRUCTION—FINANCIAL ABILITY OF PLAINTIFF TO EMPLOY GOOD PHYSICIAN—COMPLIANCE WITH TREATMENT—UNSKILLFULNESS.—Where the evidence showed that the physician and surgeon who attended the plaintiff was of unquestioned skill, and while he at first prescribed a treatment to which plaintiff would not submit, his testimony was that under all the circumstances the treatment followed was equally effective, and probably the better course, and there was no evidence that the damage was increased by want of proper surgical attention, an instruction relative to the financial ability of the plaintiff to employ a good physician, and his compliance with the treatment, and his want of responsibility for unskillful treatment, conceding it to be erroneous, was harmless.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

F. H. Short, and F. E. Cook, for Appellant.

Harris & Perkins, for Respondent.

CHIPMAN, P. J.—It is alleged in plaintiff's complaint that while he was a passenger on a certain car operated by defendant corporation at the terminus of the railroad "where said car usually stopped for passengers to alight therefrom, and while said car had slowed up for the purpose of permitting passengers to get off from said car, the employees of said defendant who were then and there running said car and had the same under their charge and control, negligently and carelessly caused said car to be suddenly and violently jerked and started and put in rapid motion without allowing plaintiff sufficient time to alight therefrom; and in consequence of said negligent and careless action of said defendant's

employees, and without any fault or negligence on the part of plaintiff, and as further consequence of the negligence and carelessness of defendant's said employees in running and conducting said car, plaintiff was violently thrown from said car to the ground and thereby sustained great injury, to wit," etc.

The attending surgeon testified that the injury was "to the right hip joint, the right thigh or femur, the bone near the hip joint, . . . . a fracture just inside the capsule of the joint, what we call an intra-capsular fracture." The injury occurred on February 4, 1904, and on January 12, 1905, when the trial closed, plaintiff was on crutches and the surgeon testified that he "did not think his patient would ever be able to get around and pursue his usual vocation in an active way," that of a bricklayer and plasterer. Plaintiff testified: "I was a passenger on an electric car. As I got out near the end of the line the car began to slow down, and it was along between 12 and 1, and I was in a hurry to get home for dinner, and I got ready to get off when it stopped. It slowed down, and was pretty near a stop, and I went to get off, and it gave a sudden jerk as I left go with my hand of the rail, the bar where I was holding on, and I had my weight on one foot and it threw me back on my side. I had my seat on the outside in the rear end of the car on the right-hand side, that would be the easterly side as I went out. I was standing on the lower step when I was thrown. I had hold of the bar—the iron. There is an iron post goes up outside of the other, the iron on the upright post. I was standing this way [showing], say we were going this way [the evidence is that the car was going north] and I had this hand [the left hand] a hold of the post and this foot [the right foot] was off the step, and this [the left foot] was on the step and just as I let go it jerked and threw me on this hip [the right hip]. My head fell to the south." He testified that the bottom step was about fifteen inches from the ground; that he was then about fifteen or twenty feet from the end of the track, and that the car went "but a little ways because I had to come down a little to get around it." He testified that he had frequently ridden on the car, and noticed that it stopped "anywhere along there clear from the end clear back as far as

fifty, thirty or twenty feet, anywhere along there from the end.'' He was sitting about the middle of the rear seat on the east side. He testified: ''I was holding on with my left hand, and put my right foot off first. My right foot was off the step, but was not on the ground when I was jolted loose.'' The motorman testified that there was nothing in the nature of a jolt or jar that attracted his attention in making the stop; that he threw the power off about ninety-four paces back and the car was running that time on its momentum, and he ''stopped in the same way as always with the brake, which is customary.'' There was evidence that the effect of taking off the brake, if done too suddenly, will sometimes ''give the car a jerk forward'' if the car was going fast, and if going slowly ''it would go ahead a little.'' The conductor testified that the car did not move more than three or four feet after plaintiff fell off; ''it was practically stopped at that time.'' He ''was standing on the rear end of the car, but did not notice plaintiff trying to get off.'' It does not appear that there were any other passengers on the car at the time.

Defendant contends that ''the plaintiff shows no such facts as justify the presumption or conclusion of negligence on the part of defendant, or a verdict in favor of plaintiff, and this point presents the controlling considerations to be presented and considered on this appeal.'' Again attention is called, in italics, to the fact *''that the evidence is entirely void of any statement covering the cause or giving any reason for the sudden jerk mentioned by plaintiff.''* It will be observed, however, that plaintiff did testify that the sudden jerking of the car, under the circumstances narrated, threw him off and was the cause of the injury. Defendant's position is that plaintiff should have gone further and shown what caused the sudden jerking of the car before a presumption of negligence would arise. The mere happening of injury to a passenger while riding on defendant's cars, unaccompanied by any other fact, would not, we think, be sufficient to raise a presumption that the injury was attributable to defendant's negligence. The injury should, in some way, be connected with the operation of the cars by defendant. A passenger might suddenly be overtaken by vertigo while walking through the car, and, in falling, meet

with an injury, or, as suggested by defendant's counsel, the passenger might commit suicide. Nothing appearing in any way to connect the railroad company with the injury, no presumption of its negligence would arise. Here, however, it did appear that the injury resulted under circumstances giving rise to an inference that but for the sudden and unexpected jerking of the car the accident would not have happened. The evidence was that the car was near the end of the road, and was slowing down, and had nearly stopped, when plaintiff started to get off. He still had hold of the stanchion, and if the car had not suddenly moved forward at accelerated speed he would not have fallen. It is a physical fact, of which the court will take judicial cognizance, and is also within the common experience of patrons of street-cars, that when a passenger, facing the front of the car, steps off while the car is moving forward he would fall forward, if at all, and not backward. The momentum acquired, while riding, would naturally carry him forward when he steps off from a moving car with his face to the front.

The evidence showed that the sudden jerking of the car was so violent as to compel plaintiff to release his hold of the stanchion and to throw him down with his head to the rear of the car, and with sufficient force to seriously injure him. These facts are to be considered in connection with the other facts testified to in determining whether a presumption of negligence arose. Ordinarily, a passenger injured while riding on a car is not in position to know more than that by some unusual movement of, or happening to, the car he has received injury. What caused the movement or happening he cannot be expected to know, and it is for this reason and for the further reason that the persons operating the car should know the cause and be able to explain it, that the presumption of negligence arises, and that the burden is cast upon the railroad company to explain the cause. The present case fairly illustrates the wisdom and justice of the rule. The proximate cause of plaintiff's injury was the sudden jerking of the car forward when he had reason to believe that it was about to stop. Beyond this he was in no position to know the cause. If such sudden movements of street-cars, under like circumstances, are necessary or unavoidable, in their operation, we think the rule would cast

the burden upon the company operating the cars to show this fact as part of its defense. In the present case the motorman testified that he had thrown off the current and was slowing down by the brakes. He may have released the car entirely from the brakes and thus caused it to suddenly move forward with a violent jerk; he may have unconsciously applied the current; but whatever he did the plaintiff could not know nor anticipate. He had a right to assume that the car was about to stop, and instead of increasing its speed suddenly, would diminish it and come to a stop. He showed enough to raise a presumption of negligence on the part of the defendant, and it was for the defendant to rebut this presumption to the satisfaction of the jury. Just what amount of evidence disclosing the circumstances attending an injury may be required to justify the presumption of negligence on the part of the carrier it is impossible to definitely point out. No two cases arising at different times are ever likely to be similar in all respects, and no hard-and-fast rule, applicable alike to all cases, can be laid down. Respondent accepts the rule stated in Shearman and Redfield on Negligence, page 561, as follows: "One reason for this rule is said to be that when an event takes place which, according to the ordinary course of things, would not happen if proper care was exercised, it is presumed that such care was not exercised."

It is claimed that "in the case at bar there was nothing which occurred which ordinarily does not happen if those who have the management use proper care. In other words, everything that did happen in this case in the matter of the operation and movement of the car is such as usually does happen and is and must be ordinarily anticipated, and therefore is not. negligence." Appellant's claim requires us to hold as matter of law that the thing which happened was nothing more than an ordinary occurrence such as every passenger is presumed to anticipate and guard against. It seems to us that the "event which took place" would not have happened "according to the ordinary course of things . . . if proper care" had been exercised by the servants of the railroad company. When a car has reached its terminus, is slowing down and nearly at a stop, as here, it cannot be said as matter of law that "according to the ordinary course of

things," the car is likely to suddenly and without warning accelerate its speed to such extent as to throw a passenger violently to the ground who was holding to a stanchion preparing to alight. Whatever may be the rule elsewhere, we think it firmly settled by the decisions of our supreme court in harmony with the views we have expressed. In *Treadwell* v. *Whittier,* 80 Cal. 574, [13 Am. St. Rep. 175, 22 Pac. 266], an instruction was under review which was drawn on the theory now urged by appellant. It was: "Plaintiff, in order to recover in this action, must prove to your satisfaction that defendants have been guilty of some fault or negligence, and must also prove what that fault or negligence was." The court said: "The law does not put on the plaintiff the burden of proving, not only fault or negligence on the part of the defendants, but also what that fault or negligence was. The law requires proof that plaintiff has sustained an injury by the breaking of the machinery by which he is carried or transported, and that such machinery was under the control and management of the defendant. [The injuries complained of were caused by the falling of a hydraulic elevator operated by defendants in their store, on which he (plaintiff) was riding at the time.] When plaintiff has made such proof, he has made out a case which entitled him, if not rebutted or disproved, to recover of defendant. The plaintiff by such proof has made a case showing negligence on the part of defendant. The burden is then thrown on defendant to show that he was not guilty of negligence for which he could be charged. This he can do by going into proof of the manner in which the hurt occurred, and showing that it was caused by an inevitable casualty, for which the law imposed on him no responsibility, or by establishing any fact which relieved him of responsibility."

The rule was stated in *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 558, [55 Pac. 324]. In that case defendant's car had come to a stop at a street crossing; the front door of the car had been fastened open and plaintiff had gone to the front platform. The car "gave a violent jerk backward," and to save him from falling plaintiff caught hold of the door casing and "just then the door swung to and caught" his hand. The trial court granted defendant's motion for nonsuit. The supreme court said: "The evidence on behalf of the plain-

tiff showed that the relation of passenger and carrier existed between him and defendant at the time he received the injury; and there was also evidence tending to show that the injury was caused by the act of the defendant in the management and conduct of the train in which it had undertaken to carry him as a passenger. A *prima facie* case is established when the plaintiff shows that he was injured while being carried as a passenger by the defendant, and that the injury was caused by the manner in which the defendant used or directed some agency or instrumentality under its control. The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation which might have been avoided by the exercise of such care. Hence, when it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in his business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on his part. The case then falls within the rule given by Shearman and Redfield on Negligence,'' hereinbefore quoted. This has been the rule in this state ever since *Boyce* v. *California Stage Co.*, 25 Cal. 460. See, also, *Samuels* v. *California St. Ry. Co.*, 124 Cal. 294, [56 Pac. 1115]; *Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390, [63 Pac. 682]; *Osgood* v. *Los Angeles etc. Co.*, 137 Cal. 280, [92 Am. St. Rep. 171, 70 Pac. 169]. (See, also, cases collected in *Philadelphia etc. R. R. Co.* v. *Anderson*, 72 Md. 519, [20 Am. St. Rep. 483, and notes 490, 20 Atl. 2].)

The presumed negligence of the defendant in the McCurrie case, *supra*, differed in degree only from defendant's presumed negligence in the present case; in each case it is obvious that the injury resulted from the management of the instrumentality operated by defendant; in neither cases does the rule of law put upon plaintiff the burden of showing the cause of such management, but does put it upon defendant. Defendant offered no evidence to explain the cause of the sudden start forward which caused the injury. The evidence in defense was a denial that any sudden jerk of the car occurred or that anything unusual happened, and merely produced a conflict in the evidence. It is not neces-

sary to consider the rule as to contributory negligence on the part of plaintiff, as defendant makes no point upon that feature of the case. Nor do we think it necessary to consider the cases cited by appellant from other jurisdictions, some of which seem to sustain its contention. The rule established by our supreme court must be our guide.

Several instructions given by the court, and others requested by defendant and refused, were noted in the assignments of error. With one exception the questions involved are, as we understand counsel, dependent upon the view taken by appellant upon the rule already fully discussed. As we hold against defendant upon these questions the instructions referred to need not be examined. The exception is the instruction numbered 10, by which the jury was told that "it was the duty of plaintiff to use such reasonable efforts as were in his power to mitigate the consequences of the injury; . . . and in this connection, you will consider the financial ability of plaintiff to employ physicians and all the circumstances connected with their employment and with the compliance with the treatment prescribed by them; and if you find that he used such reasonable efforts as were within his power to employ a physician or physicians of good reputation and standing for the purpose of treating his injuries, and that he complied with and took the treatment prescribed by such physician or physicians, then you are instructed that he is not responsible for any unskillful treatment of him on the part of said physicians; and the fact that a more skillful treatment might have been prescribed by the same or other physicians, or the fact that he did not employ the best medical and surgical skill to be had, can in no way affect his right to recover herein, nor the amount of damages which he is entitled to recover." The only testimony as to the character of the injury and the treatment prescribed and used came from the attending physician and surgeon whose qualifications were shown and are not disputed to have been equal in all respects to meet the exigencies of the case—both as to diagnosis and treatment of the injury. The criticism of the instruction is directed to that part in which the financial ability of plaintiff to employ physicians is mentioned. If the fact had been that because of poverty or through motives of economy plaintiff

had employed a wholly unskillful person to treat him, and his injury had thus resulted in being greater than it would have been with skillful treatment, the question might have arisen as to the correctness of the instruction. But the evidence was that the attending physician was of unquestioned skill, and while he at first prescribed a treatment to which plaintiff would not submit, his testimony was, that under all the circumstances the treatment prescribed and followed was equally effective, and probably the better course. There was no evidence that the damage was increased by want of proper surgical attention. Conceding error, it was without prejudice to defendant. The judgment and order are affirmed.

Buckles. J., and McLaughlin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1905, and the following opinion was then rendered:

CHIPMAN, P. J.—We endeavored in the opinion to make our position free from ambiguity and uncertainty. Defendant urges that we carried the rule of presumptive negligence further than is warranted by any of the decisions of the supreme court of this state, and that our position is opposed to the rule laid down in well-considered cases in other states. That the point in controversy may clearly appear we quote from the petition: "If the facts testified to up to the point of injury are such only as would not, if the injury did not happen, themselves show any negligence or unusual operation, then the happening of the injury does not raise the presumption of such negligence." Quoting certain passages from the opinion, the petition further states: "The point we make and which we have sufficiently stated is that the other facts must show negligence, but even if the contrary view were correct, the evidence of the nature of plaintiff's fall would be quite insufficient to raise such presumption." Again: "It will be observed again, that the evidence of the fall of the plaintiff is by the court made the controlling consideration in determining negligence." Still further: "In other words, the passenger cannot, by falling down or falling off or sustaining an injury, assist in creating the

presumption of negligence, and unless something exceptional or unusual appears independent of what happens to the passenger, the presumption of negligence is not raised." With this statement there need be no further doubt as to plaintiff's point, and we shall meet it as frankly and squarely. Happily, if we are wrong, defendant is not without the means of correcting the error.

Suppose a railroad train is slowing down at a station for the purpose of allowing passengers to alight and has nearly stopped. Suddenly the train jerks forward, and with such force as to throw the passengers, who are moving toward the doors, preparatory to alighting, with violence to the floor of the cars, breaking limbs, dislocating joints, fracturing skulls, and otherwise maiming and injuring them. Our position is that the nature and extent of the injury may be taken into consideration in determining the question of negligence of the carrier in operating the train, and whether the jerking was unusual. If in the operation of railway trains or street-cars their sudden jerking or jolting, when slowing down to stop, has been of such notorious character as to admonish passengers of the danger and would, as matter of common prudence, require them to keep their seats until the cars have come to a stop, we can see how the rule contended for might have some application. But no such thing is true. Passengers from street-cars are urged to alight quickly, and are encouraged to make preparations to do so by approaching exits before the car stops. This is common knowledge. If the rule was that street-car passengers should hold their seats until the car stops, it would take many more cars to perform the service, and such a rule would call for some sort of notice to passengers. But why should not the jury consider the circumstance of the injury itself, its nature and extent? Why is it not a legitimate fact tending to show whether the jolt or jerk of the car, causing the injury, was unusual or not? Unless it can be maintained (which it cannot) that street-cars, when about to stop, usually, and so generally as to be within the several knowledge of passengers, are so liable to jerk or jolt as to throw occupants to the ground if they prepare to alight, we do not think the rule we have laid down is unreasonable or unjust. In the case of *Samuels* v. *California Street etc. Ry. Co.*, 124 Cal. 294,

[56 Pac. 1115], the court took into consideration, on the question of negligence, the fact that two passengers, besides the plaintiff, were thrown from the car. Suppose in the present case there had been several passengers and all of them moving toward, or were on the dummy, with the view of alighting, and all of them had been thrown violently to the floor of the car, or had been pitched headlong from the platforms. Would these facts not have been admissible, and if admissible, for what purpose except to throw light upon the question of negligence? How else can the question of the carrier's negligence be within the means of the passenger to show presumptively or at all, in ordinary cases, except he be allowed for that purpose to show, not only that something happened to the car through the carrier's agency, but that he was injured thereby through no fault of his own? We are still of the opinion that it was competent, in the present case, to show the circumstances and nature of the injury as tending to assist the presumption of negligence on the part of the defendant which arose from evidence showing the sudden and unusual jolt.

Petitioner is not warranted in the statement that "the fall of the plaintiff is by the court made the controlling consideration in determining negligence." It was clearly shown in the opinion that "the mere happening of the injury to a passenger while riding on defendant's cars unaccompanied by any other fact would not, we think, be sufficient to raise a presumption that the injury was attributable to defendant's negligence. The injury should in some way be connected with the operation of the cars by defendant." It is beyond dispute that the jerking of the car in the present case was the cause of the injury. That much shown, the character of the injury might well tend to show that but for defendant's negligence it would not have happened.

Rehearing denied.

McLaughlin, J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1906.