[Sac. No. 2189.   Department Two.—December 7, 1915.]

AUGUST FROEMING and OLGA FROEMING et al., Minors, by August Froeming, Guardian *ad Litem*, Respondents, v. STOCKTON ELECTRIC RAILROAD COMPANY (a Corporation), Appellant.

NEGLIGENCE—STREET RAILROAD—DEATH OF PASSENGER—COUNTS CHARGING DIFFERENT ACTS OF NEGLIGENCE.—In an action against a street railroad company to recover for the death of a passenger while alighting from a street-car, the plaintiffs may charge the negligence of the defendant in separate counts, as occurring in as many ways as they believed their evidence would show, and are entitled to recover if any one well-pleaded count is supported by sufficient evidence.

ID.—INJURY WHILE ATTEMPTING TO ALIGHT FROM CAR—STANDING ON PLATFORM OR STEPS.—An allegation in such a complaint that the passenger was injured while she was "attempting to alight" from the car is not to be construed as an admission that the passenger was actually and negligently in the act of alighting from a moving car. Fairly construed, the allegation means that the car had slowed down, was approaching the place where it usually stopped, and that the passenger had made preparations to alight, and was in readiness to alight, when and if it stopped. The fact that she had gone upon the platform for this purpose, or was upon the steps, was not in and of itself negligence in law.

ID.—GUARDIAN AD LITEM—PLEADING APPOINTMENT.—In an action by minor plaintiffs, the overruling of a demurrer to the complaint for insufficiency in the allegations of the appointment of their guardian *ad litem* is without prejudice, where the facts of the due appoint-

CLXXI Cal.—26

ment and acceptance by the appointee were shown without contradiction upon the trial.

ID.—EVIDENCE—DENIAL OF NONSUIT.—Under the evidence in this case, it was proper to deny the motion for nonsuit as to the cause of action which averred that after the car had slowed down and arrived at or near the place where it usually stopped to allow passengers to debark, and while the deceased was attempting to alight therefrom, the defendants' agents and servants negligently caused the car to be suddenly and violently jerked and started forward.

ID.—RES GESTAE—DECLARATIONS OF CONDUCTOR AFTER ACCIDENT.—The declarations of the conductor of the car, made after the accident, in explanation as to how it occurred, are not part of the *res gestae,* and are inadmissible in evidence.

ID.—JUDICIAL NOTICE—TABLES OF LIFE EXPECTANCY.—Courts take judicial notice of the standard tables of life expectancy, and of the tables that are standard tables, and any such table satisfactory to the court may be introduced in evidence without foundation proof.

ID.—IMPEACHMENT OF WITNESSES—CONTRADICTORY WRITTEN STATEMENTS.—Witnesses for the plaintiff in such action cannot be impeached by showing that they made contradictory statements in writing to a notary public, who took their statements at the instance of the defendant, unless a proper foundation for the impeaching questions is laid.

ID.—CONTRIBUTORY NEGLIGENCE—STANDING ON STEPS PREPARATORY TO ALIGHTING.—A passenger on a street-car has the right, in the sense that he is not guilty of contributory negligence *per se* in so doing, to be upon the steps of the car preparatory to debarking therefrom. It is for the jury to determine whether or not the passenger is guilty of contributory negligence in going upon the platform of the car or the steps thereof preparatory to alighting therefrom when the car stops.

ID.—INSTRUCTIONS—STARTING TO LEAVE CAR BEFORE IT STOPS.—In such action, where the court fully and correctly charged the jury on the subject of contributory negligence, an isolated instruction stating that "it is not contributory negligence as a matter of law for a passenger to start to leave a street-car before it comes to a full stop, but it is a question of fact for the jury to determine whether the act of the passenger in so doing constituted negligence," cannot be deemed misleading.

ID.—BURDEN OF PROVING CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.— Although the defendant is relieved from the burden of proving contributory negligence if the evidence of the plaintiff establishes it, an instruction that such burden is cast upon the defendant will not be deemed misleading, when the other instructions repeatedly informed the jury that no recovery could be had if they believed from all the evidence that the passenger had been guilty of such negligence.

ID.—VERDICT NOT EXCESSIVE.—In this action by a husband and three minor children to recover for the death of his wife and the children's mother, a verdict of eighteen thousand dollars cannot be held excessive.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

D. M. Young, for Respondents.

HENSHAW, J.—Eva Froeming, traveling at night upon an electric street railway car of the defendant corporation in the city of Stockton, stepped, fell, or was thrown from the car, sustaining injuries which caused her death. Her husband and her minor children, through their father as guardian *ad litem,* brought their action to recover damages for that death. The verdict of the jury was in plaintiffs' favor. The judgment followed the verdict, and from that judgment and from the order denying its motion for a new trial defendant appeals.

Saving the conductor of the car, whose testimony is disputed, there was no eye-witness to the manner in which the deceased sustained her injuries. There was no doubt but that the deceased had signaled to the conductor to stop the car for the purpose of allowing her to alight. The place of stoppage would be at or upon the next street which the car was approaching—Eighth Street. There is no doubt either but that the motorman of the car, under the conductor's signal, slowed his car for the purpose of making this stop. There is also no doubt but that the deceased arose from her seat, which was upon the open rear end of the car, and stood either upon the platform or upon one of the steps, in readiness to alight. But whether the car actually came to a stop and then suddenly, and without giving the deceased time to alight, lunged forward with a jerk, or whether after slowing down and coming almost to a stop it did this same thing, without actually stopping, plaintiffs' witnesses were in doubt. Wherefore plaintiffs charged in separate counts, one count alleging that the

car after stopping, suddenly started, the other count averring that after the car had slowed down and arrived near or at the place where it usually stopped to allow passengers to debark, and while the deceased was attempting to alight therefrom, the defendant's agents and servants negligently caused the car to be suddenly and violently jerked and started forward.

Appellant's attorney complains bitterly of the fact that the court overruled his demurrer to this complaint, but no more bitterly than he complains of every ruling, act, and happening at the trial. He complains that the counts are inconsistent, meaning by this that it could not be true that the deceased could both have been thrown from the car by a sudden jerk before it stopped and thrown from the car by a sudden jerk after it stopped. This is quite true. He supports his argument that the demurrer should have been sustained by showing that after the evidence of plaintiff had been taken at the trial the court granted his motion for a nonsuit as to the count charging upon the stoppage of the car. Therefore, he argues, if his demurrer had been sustained and plaintiffs had been put to their election, and had elected to stand upon the count charging that the car had been stopped, defendant would have prevailed in the action. But underlying this most specious argument is found the very reason why inconsistent counts are permitted. (*Stockton etc. Works* v. *Glen Falls Ins. Co.,* 121 Cal. 167, [53 Pac. 565].) The result of appellant's success in having the demurrer sustained and the plaintiffs' unfortunate choice of counts in the election thus forced on them would have meant that it prevail in the action, but it would also have meant that the plaintiffs would have lost a meritorious cause of action and right of recovery through some over-refined principle of pleading. However, suffice it to say, that the principle which appellant invokes as existing does not exist. This was a single action for a recovery growing out of injuries negligently inflicted by defendant upon deceased. It was open to plaintiffs to charge this negligence in separate counts, as occurring in as many ways as they believed their evidence would show, and plaintiffs are entitled to recover if any one well-pleaded count was supported by sufficient evidence. (*Jenson* v. *Dorr,* 159 Cal. 742, [116 Pac. 553].) Again, appellant would have this court construe the language of one of the counts which is as follows,

"while the said Eva Froeming was attempting to alight therefrom," as containing an admission that Eva Froeming was actually and negligently in the act of alighting from a moving car. Such, however, is not the just import of the allegation, which means, fairly construed, that the car had slowed down and was approaching the place where it usually stopped, and that Eva Froeming had made her preparations to alight, and was in readiness to alight, when and if it stopped. The fact that she had gone upon the platform for this purpose, or even upon the steps, was not in and of itself negligence in law. (*Boone* v. *Oakland Transit Co.,* 139 Cal. 490, [73 Pac. 243]; *Renfro* v. *Fresno City Ry. Co.,* 2 Cal. App. 317, [84 Pac. 357].) The complaint, after setting forth the names and ages of the minor children and establishing that they were under the age of fourteen, averred "that by an order of the court made on the 28th day of October, 1912, August Froeming was appointed their guardian *ad litem* and was by said order authorized to commence and prosecute this action in their behalf, and that he accepted said appointment." It is argued that the demurrer should have been sustained because this was not a due pleading of the appointing of a guardian *ad litem,* but that it was a pleading of the conclusion of the pleader. But even if these averments could have been drawn with more legal skill, suffice it to say that the overruling of the demurrer did not injure, and could not have injured, appellant, and the facts of the due appointment and acceptance by the appointee were shown without contradiction upon the trial. Certain ambiguities and uncertainties in the counts were also urged in the demurrer. Some of these it may be conceded exist. They were, however, of trivial character, and the overruling of the demurrer upon this account in no way confused or misled the defendant in its defense. The error was, therefore, immaterial. (*Stein* v. *United Railroads,* 159 Cal. 368, [113 Pac. 663].)

The court granted appellant's motion for a nonsuit as to the count charging that the car had stopped. Appellant insists that it should have granted the nonsuit upon the whole action. The evidence of plaintiffs disclosed that Mrs. Froeming lived at or near Seventh Street; that she asked the conductor to stop the car when it was at or near Seventh Street; that she asked the conductor twice; that when the conductor signaled for the car to stop it had passed Seventh Street, and

its next usual stopping place was at or near Eighth Street; that Mrs. Froeming had been sitting in a rear seat in the back open end of the car. Immediately in front of her were two witnesses—Shoaf and his wife—and immediately in front of them a third witness, Anderson. They testified to the slowing down of the car—whether it actually stopped or not they were uncertain—to its sudden lunge and jerk forward, and to hearing the fall of a body, which they knew must be that of the woman they had heard ask the conductor to stop the car. The men testified that they immediately swung off the car while it was in motion and went to the rescue of the woman, finding her lying in the street unconscious. They testified further that after the conductor had signaled for the car to stop (the car was approaching the end of its run) the conductor went forward to read and record his register of fares, and was doing this, or was talking to the motorman, when the accident occurred. Walter Sanborn was called on behalf of plaintiffs and testified that he was the conductor of the car, and that Mrs. Eva Froeming was a passenger on his car about 10 o'clock in the evening when the accident occurred. On cross-examination he gave his version of the accident, which is as follows: After the car had passed Seventh Street Mrs. Froeming told him she desired to get off at Eighth Street. He signaled to the motorman to stop at Eighth Street. His car did not slow down for the purpose of letting Mrs. Froeming off and then start up suddenly with a jerk; nor yet did it stop for the purpose of letting her off. Mrs. Froeming deliberately alighted from the car when it was going about six or seven miles an hour. He saw her getting off the car and warned her to wait until it stopped, saying to her, "Lady, wait for the car to stop." She made no reply and stepped to the bottom step and then stepped off. He saw her fall and immediately swung off after her. Appellant's argument upon its motion for a nonsuit and the argument which it here addresses to this court is that plaintiffs were bound by this testimony, since they had called the conductor as a witness, and that if it be thought there is a conflict between this testimony and that of the other witnesses who did not actually see the occurrence, then the testimony of the other witnesses must be utterly discarded as incredible and unworthy of belief. The statement of appellant's position in this regard demonstrates its unsoundness. There was sub-

stantial testimony before the trial court and before this court supporting plaintiffs' charge. It was not for the trial court upon the hearing of the motion for a nonsuit, nor yet for this court upon appeal, to cast out of consideration all of that evidence. It was the duty of the trial court to submit it, as it did, to the consideration of the jury, and the verdict of the jury establishes that they regarded it as trustworthy and true. What has been said touching the motion for a nonsuit sufficiently answers appellant's next contention, elaborately argued, that the evidence is insufficient to justify the verdict. The argument here is based upon the same grounds as those above noted—the incredibility of plaintiffs' witnesses other than the conductor, who was not called by them to testify upon any of these matters, and the assertion that the plaintiffs must be bound by the testimony of the conductor, which testimony appellant itself brought out on so-called cross-examination. But as it was cross-examination on matters not touched upon in the testimony in chief, under familiar principles the appellant made the conductor its own witness upon these matters. For, as has been said, all that plaintiffs sought to elicit by their examination in chief of the conductor was the fact, not even in controversy, that Eva Froeming had been a passenger upon his car at the time of the accident.

We are asked to consider some sixty-three asserted errors in the reception and rejection of evidence. It would be profitless to review them all. Thus, exception is taken to the court's refusal to allow a witness to testify to what the conductor did and said after the accident, the purpose of the inquiry being to show that the conductor voiced some explanation as to how the accident occurred. The ruling was proper. Such *ex post facto* evidence forming no part of the *res gestae* and being usually self-serving is not admissible. Again, the court suggested: "Mr. Levinsky, allow me to suggest, when you repeat the witness' testimony, you give the witness a chance to state whether that was his testimony or not. I did not so understand his testimony." This remark, to which an exception was taken, is urged as error. The order appointing August Froeming guardian *ad litem,* offered in evidence, is objected to, amongst many others, upon the ground that the defendant cannot be bound by the allegation set forth in the petition for the appointment of guardian. The court properly admitted the order, limiting the admission with care

for the purpose of only showing the fact of appointment and not the truth of any of the matters contained in the petition. Exception to this is taken. These may serve as exemplars showing the inutility of a detailed consideration of all, for most of them are of the same general character. Of the few that merit consideration, one is the exception to the introduction of McCarty's Tables of Life Expectancy without a foundation being laid therefor. But courts take judicial notice of the standard tables of life expectancy, and so of course take judicial notice of the tables that are standard tables, and any such table satisfactory to the court may be introduced without foundation proof. (*Valente* v. *Sierra Ry. Co.*, 151 Cal. 539, [91 Pac. 481].)

The three principal witnesses for the plaintiffs had each been interviewed by an emissary of the defendant, a notary public, who took down their statements in writing. These statements, after having been so taken down, were read to these witnesses. The witnesses were uncertain whether it could be said that they had sworn to these statements. They said they were asked whether they would swear to them, and replied that with certain corrections they would. They did not seem to understand that they had in fact sworn to them. Upon cross-examination of these witnesses these statements were produced and extracts from them read to the witnesses. Objections were from time to time interposed to the method of cross-examination, upon the ground that if it was sought to impeach the witness by showing contradictory statements, the proper foundation for the questions had not been laid. Complaint is made of the court's rulings upon this matter and of its further rulings against admitting the testimony of the witness for the defense who had taken down these statements. The court's rulings were to the effect that if it was designed to impeach the witness by showing that he had made contradictory statements embodied in the writing, the proper foundation therefor had not been laid. The attorney for the defendant is no novice at the bar, and needed no enlightenment as to the proper course to pursue in the matter. That he failed to pursue it, as unquestionably he did, forces the inference that the statements contained in the writing were not contradictory to the statements given by the witnesses upon the stand, and that the efforts of the attorney were directed to establishing the imputation and implication that

they were so contradictory rather than the fact that they were.   Thus, to illustrate, witness Shoaf for plaintiff having testified upon direct examination that, while he could give no definite distance in feet, the car proceeded about three hundred feet after the accident before it came to a stop, he is asked upon cross-examination whether he did not make a, statement to Mr. Breitenbucher and replied that he did, when the following took place:

"Q. Did you not in that statement say, the car went about one-half a block after the accident?

"A. (Witness.)   I don't think you will find that in that statement.

"Q. Sir?

"A. I don't think you will find that in that statement.

"Q. You please read this language and see if I find it there or not.   Read it, please.   (Hands paper to witness.)

"A. Yes; that says 'half a block.'

"Q. Read what it says there 'the car,' start with that; what does it say?

"Mr. Young: Well, I submit that is not the way to testify, if your Honor please; if the counsel wants to introduce anything that contradicts him let him introduce it.   We submit it is incompetent for him to read from the statement.

"The Court: The objection may be sustained.

"To which ruling counsel for defendant then and there duly excepted.   Exception No. 6.

"Q. And you didn't say the car went about one-half a block after the accident, did you?

"A. That is what I said.

"Q. What is that?

"A. About half a block.

"Q. That is what you said in that statement on June 26th— the 26th of August, 1912, wasn't it?

"A. Yes, sir.

"Q. Now, is your memory any better to-day than it was on August 26, 1912?

"A. Not that I know of.

"Q. How do you testify to-day that car went two or three hundred feet?

"A. Well, that is in the neighborhood of my judgment a half a block would be two or three hundred feet, one or the

other wouldn't make no difference to me; I didn't measure the ground; just simply offered it as—''

It is apparent that there could be no impeachment of the witness in this condition of the record. He admits that he used the language contained in his written statement and quite clearly explains it when he says that he regarded half a block as the equivalent of two or three hundred feet.

The same is true of a similar effort to impeach Mrs. Shoaf. She had testified concerning the accident that the car had not actually stopped, but ''it did come to nearly a stop, so near—it was not stopped; but it came very near to it. It was not quite a stop, no, sir.'' Then upon cross-examination she was asked concerning the statement which she admitted that she made to Mr. Breitenbucher. The record discloses the following:

''Q. Did he not in that conversation ask you: 'How fast was the car going when Mrs. Froeming got off of the car'; and did you not answer him, 'I cannot state how fast the car was going at the time, but will state that I would not want to jump off while it was going at the rate it was'?

''A. (Witness.) No, sir. If I answered I misunderstood; he asked me if I understood him right, how far, or how fast was the car going after it started, after the lady fell off, and I said I would hate to get off at the rate it was traveling. If I remember right, that is it. If he asked me the other question, I didn't understand it that way.

''Q. Did you not tell him in that same conversation that the car was in motion when this lady fell off?

''A. I did say that the car had not come to a complete stop.

''Q. What is that?

''A. I did say that the car did not come to a complete standstill.

''Q. Did you tell him anything about a 'standstill'—it came to a standstill, in that conversation?

''Mr. Young: Now, one moment. We object to that, not the proper foundation for contradiction. We can't go into everything she told.

''The Court: That is true. Objection sustained.

''Q. Now, after having read that paper, did you not state to Mr. Breitenbucher on the twenty-sixth day of August, 1912, you, he, and Mr. Tretheway being present, and also the driver of the automobile, whether he was in the house or not I don't

know, that the car was in motion when she stepped off which was about twenty feet north of the street crossing; after the lady fell the car went about one-half a block after the accident? Did you tell that to him at that time?

"A. I say the car came very near to a standstill.

"Q. I haven't asked you that.

"A. I beg your pardon, I didn't understand the question.

"Q. Asking if you made this statement just read to you to Mr. Breitenbucher at that time?

"A. Well, I don't know that I worded it just that way. If I did I didn't understand it in that way, because I have always said that the car didn't come quite to a standstill. But the car started up—my idea of it, my understanding of what he said was when the car started to go on over across the street.

"Q. Did you tell him anything in that conversation about the car having—in the conversation that you had with Mr. Breitenbucher on the twenty-sixth day of August, 1912, did you tell him anything about the car having come to almost a stop?

"Mr. Young: We object to it as incompetent, irrelevant, and immaterial, more particularly incompetent, to get out testimony in that way."

Here the witness affirmed and explained the matters contained in her written statement. She did not deny having said those things, but declared what she meant by them. When Mr. Breitenbucher was placed upon the witness-stand appellant's efforts were directed not to legitimate impeachment, but to an effort to show a valueless negative, that the witness did not make these explanations at the time he took down her statement. The court's rulings that this evidence was not legitimate evidence in impeachment were correct.

Witness McCann, motorman of the defendant's car, had testified to his having received the signal bell to stop his car at Eighth Street and that he proceeded so to stop it, slowing it down, and that he made no stop until the car had partially crossed Eighth Street, when he brought it to a standstill at its usual place of rest. Upon cross-examination the foundation of time, place, circumstances, and persons present being laid, he was asked if he did not testify at the coroner's inquest in certain language, and what purported to be his testimony was then read to him. He declared that such was his testimony save in one or two minor particulars, as that there

were four passengers upon the front of the car with him instead of three, and that the rear end of his car was not at the Eighth Street crosswalk, but farther into Eighth Street. Under these explanations no effort was made to impeach the witness by proving what in fact his testimony was at the coroner's inquest. We are unable to perceive and we have not been shown the error which appellant asserts was embodied in the ruling permitting plaintiff's attorney to ask the question concerning the testimony which the witness had given at the coroner's inquest.

The jury was ably and painstakingly instructed by the court. Instruction 2 is in the following language:

"It is the duty of a street railway company to afford a reasonable time for its passengers to alight from its cars at the place where the car stops for that purpose, and if a passenger is injured without fault on his part, while on the steps of a car slowing down for the purpose of enabling passengers to alight, preparatory to alighting when the car has stopped, by reason of a sudden starting of the car, the burden is thrown upon the company to show that the injury was not the result of its own act of negligence."

Appellant complains of this instruction as declaring to the jury "that a passenger has a right to be on the steps of a moving car." Unquestionably a passenger has the right to be on the steps of a moving car at times. He has that right when he has embarked on the car and the car starts forward before he can enter it. He has the right (in the sense that he is not guilty of negligence *per se* in so doing) to be upon the steps of the car preparatory to debarking therefrom. Were this not so, then his mere presence upon the step would in every case be negligence *per se* which would bar a recovery. Such, however, is not the law, as the court further instructed the jury in instructions 8 and 9, of which complaint is also made, and which are to the following effect:

"When it is shown that the injury to the passenger was caused by the act of the carrier in operating the instrumentalities employed in its business, there is a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part. It is for you to determine whether or not a passenger is guilty of contributory negligence in going upon

the platform of a car or the steps thereof preparatory to alighting therefrom when the car stops.

"Contributory negligence on the part of a passenger cannot be presumed from the mere fact of injury, but must be proved, and the burden of proving contributory negligence on the part of the injured person is cast upon the defendant."

That these instructions fairly embrace the law is fully established by *Boone* v. *Oakland Transit Co.,* 139 Cal. 490, [73 Pac. 243]; *Renfro* v. *Fresno City Ry. Co.,* 2 Cal. App. 317, [84 Pac. 357]; *Valente* v. *Sierra Ry. Co.,* 151 Cal. 539, [91 Pac. 481]; *Kline* v. *Santa Barbara etc. Ry. Co.,* 150 Cal. 741, [90 Pac. 125]; *Dougherty* v. *Union Traction Co.,* 23 Cal. App. 17, [136 Pac. 722]; *Scott* v. *Bergen Traction Co.,* 63 N. J. L. 407, [43 Atl. 1060]. And, finally, to show the completeness with which the trial judge covered this phase of the law, the court further, at the request of appellant, gave the following instructions upon this matter:

"If you believe, from the evidence in this case, that Eva Froeming stepped off of the car, or attempted to alight from the car of the defendant, while said car was in motion, and before the said car had stopped, then she was guilty of contributory negligence in this case, and the plaintiffs herein are bound by such contributory negligence, and they cannot recover in this case, and your verdict must be for the defendant.

"If you believe, from the evidence in this case, that Eva Froeming attempted to alight from the car of Stockton Electric Railroad Company while said car was in motion, and by reason of such attempt she received injuries which resulted in her death, then I instruct you that she, in such an attempt to alight from said car (if you so believe that she did attempt to alight from said car while the said car was in motion), was guilty of negligence, and the plaintiffs herein cannot recover any damages by reason of her death, and your verdict must be for the defendant."

Instruction 3, which the court gave, is in the following language:

"It is not contributory negligence, as a matter of law, for a passenger to start to leave a street-car before it comes to a full stop, but it is a question of fact for the jury to determine whether the act of the passenger in so doing constituted negligence on his or her part."

Of this complaint is made that it is misleading.   Whatever uncertainty appellant may think exists in this one sentence, detached from the other instructions, is certainly removed when the instructions are read as a whole.   Appellant further objects to an instruction which the court gave, and which declares a familiar rule of law, that the burden of proving contributory negligence is cast upon defendant.   He argues that the rule of law is that the defendant is relieved from this burden if the evidence of the plaintiff establishes this contributory negligence.   This is quite true.   But the jury could not have been misled, for it was repeatedly instructed that if ''from the evidence,'' meaning thereby necessarily and of course all of the evidence, it believed Eva Froeming to have been guilty of contributory negligence, the plaintiffs could not recover.   Moreover, if appellant desired an instruction embodying this particular modification of the general principle, it should have proposed it.   None of the other asserted errors, either in giving or refusing to give instructions, requires further detailed consideration.   The proposed instructions, the giving of which was refused, either were erroneous in point of law or were adequately covered by instructions which the court actually gave.

We are asked to declare that the verdict—a judgment in the sum of eighteen thousand dollars—is excessive.   The deceased was devoted to her husband and children.   Of the latter, three were girls of tender years, and all were minors under the age of fourteen years.   The deceased had a knowledge of accounts and computation and had been a bookkeeper in a bank.   She aided her husband, who was a contractor, in the computations necessary for his bids in the matter of his contracts.   At the time of her death she was working to help maintain her home.   It cannot be said that the award of the jury was excessive.   (*Valente* v. *Sierra Ry. Co.*, 158 Cal. 412, [111 Pac. 95].)

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.