## SOUTHERN PAC. CO. v. HANLON.

(Circuit Court of Appeals, Ninth Circuit. December 14, 1925. Rehearing Denied January 18, 1926.)

No. 4655.

**1. Carriers ⚖⇒316(3)—Res ipsa loquitur rule held applicable to injuries to passenger from sudden stopping of train.**

Where passenger was thrown to floor of car and injured by sudden stopping of train, case was within rule that, when the thing is under management of defendant or his servants, and accident is one which does not ordinarily happen, if proper care is used, it affords reasonable evidence, in absence of explanation, of want of care.

**2. Negligence ⚖⇒121(2)—Application of res ipsa loquitur rule depends on facts, not on form of pleadings.**

Ordinarily, application of res ipsa loquitur rule depends on facts and circumstances surrounding accident, and not on form of pleadings.

**3. Negligence ⚖⇒121(2)—Plaintiff, alleging specific negligence, unaided by presumption.**

Plaintiff may, by alleging a specific act of negligence, limit himself to proof of specific act of negligence, unaided by any presumption under res ipsa loquitur rule.

**4. Carriers ⚖⇒316(3)—Burden of excusing sudden stopping of train, causing injury to passenger, held on carrier.**

Passenger, by alleging that injuries were caused by suddenly stopping train, did not assume burden of proving that there was no excuse or necessity therefor; but burden was on carrier to prove excuse by preponderance of evidence, independent of res ipsa loquitur rule.

**5. Carriers ⚖⇒298(1)—Sudden stopping of passenger train, without justification or excuse, held negligence.**

Sudden stopping of passenger train by application of emergency brakes, without justification or excuse, is failure to exercise that high degree of care which law imposes on passenger carriers.

**6. Carriers ⚖⇒298(1)—Engineer held not negligent in suddenly applying emergency brakes, to save life of trespasser, if reasonably necessary.**

Engineer is not negligent in suddenly applying emergency brakes, to save life of trespasser on train or on track, if such course is reasonably necessary, and if trespasser's life was not imperiled by antecedent negligence of carrier.

**7. Carriers ⚖⇒320(19)—Whether carrier sustained burden of excusing sudden stopping of passenger train, causing injury to passenger, held for jury.**

Whether carrier sustained burden of excusing sudden stopping of passenger train, causing injury to passenger, by engineer's testimony that he acted to save trespasser's life, held for jury; engineer being interested witness.

In Error to the District Court of the United States for the Northern Division of the Northern District of California; George M. Bourquin, Judge.

Action by Mary E. Hanlon against the Southern Pacific Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Devlin & Devlin, Robert T. Devlin, and Wm. H. Devlin, all of Sacramento, Cal., for plaintiff in error.

J. Oscar Goldstein, of Chico, Cal., for defendant in error.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. [1] This is a writ of error to review a judgment for the plaintiff in an action to recover damages for personal injuries. The sufficiency of the testimony to warrant the submission of the case to the jury is the only question presented for consideration here. At the time of receiving the injuries complained of the defendant in error was a passenger on a train operated by the plaintiff in error between Portland, Or., and Chico, Cal. Soon after the train left Glendale, Or., it was brought to a sudden stop by an application of the emergency brakes, and the sudden stopping and jerking of the train threw the defendant in error to the floor of the observation car, in which she was riding, causing the injuries complained of. The complaint alleged that the agents, servants, and em-

ployees of the plaintiff in error, in charge, carelessly, negligently, and without warning brought the train to a sudden stop, while the same was traveling at a speed of 30 or 40 miles per hour. The answer denied the negligence charged in the complaint, and averred that the train was stopped through the application of the emergency brakes, to save the life of a trespasser who had missed his footing in attempting to board the train.

The testimony on the part of the defendant in error brought the case clearly within the rule: "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." Atlas Powder Co. v. Benson (C. C. A.) 287 F. 797. See, also, Renfro v. Fresno City Ry. Co., 2 Cal. App. 317, 84 P. 357; Babcock v. Los Angeles Traction Co., 128 Cal. 173, 90 P. 780; Consolidated Traction Co. v. Thalheimer, 59 N. J. Law, 474, 37 A. 132; Scott v. Bergen County Traction Co., 63 N. J. Law, 407, 43 A. 1060; Paul v. Salt Lake City R. Co., 30 Utah, 41, 83 P. 563; Fitch v. Mason City & C. L. Traction Co., 124 Iowa, 665, 100 N. W. 618.

[2-5] The plaintiff in error concedes the rule in question, but contends that it has no application in this case, because the complaint alleged specifically the act or omission constituting negligence, citing The Great Northern, 251 F. 826, 163 C. C. A. 660. Ordinarily the application of the rule depends upon the facts and circumstances surrounding the accident, and not upon the form of the pleadings. Roberts v. Sierra Ry. Co., 14 Cal. App. 180, 111 P. 519, 527; Nashville Interurban Ry. v. Gregory, 137 Tenn. 422, 193 S. W. 1053; Walters v. Seattle, R. & S. R. Co., 48 Wash. 233, 93 P. 419, 24 L. R. A. (N. S.) 788; Washington-Virginia Ry. Co. v. Bouknight, 113 Va. 696, 75 S. E. 1032, Ann. Cas. 1913E, 546. No doubt, a plaintiff may limit himself to proof of a specific act of negligence, unaided by any presumption, by alleging a specific act of negligence only, such as a slippery bathroom floor, as in The Great Northern Case; but here the defendant in error alleged negligence in stopping the train, just as she might have alleged a negligent derailment or a negligent collision, had such been the fact, and by alleging the negligent stopping of the train she did not assume the burden of proving that there was no excuse or necessity for the application of the emergency brakes, any more than she would have assumed the burden of proving the absence of an excuse for the derailment or collision, had one or the other occurred.

Indeed, independently of the rule of law in question, the burden was on the plaintiff in error to prove the excuse relied on. The testimony on both sides showed that the train was stopped very suddenly by an application of the emergency brakes, and to stop a train in that manner, without excuse or justification, was a plain failure to exercise that high degree of care which the law imposes on passenger carriers. The plaintiff in error realized this, and attempted to justify or excuse the act of the engineer in stopping the train by alleging and proving that the act was necessary to save the life of a trespasser. This excuse or justification was affirmative matter, which the plaintiff in error was bound to prove by a preponderance of the testimony, under the most elementary rules of evidence.

[6] The excuse offered by the plaintiff in error for suddenly stopping the train was this: The engineer testified that, as he was leaving Glendale it became necessary to slow down in order that some trespassers might be ejected from the train; that thereafter the train picked up speed, and after it had moved 15 or 16 car lengths from the station, and attained a speed of 7 or 8 miles per hour, a trespasser dashed for the train and seized the handiron at the rear of the tender; that the trespasser missed his footing on the steps, and hung suspended by one hand, his legs dragging along on the ground in such manner as to cause the witness to believe that he would be run over by the wheels of the baggage car immediately following; and that the witness immediately applied the brakes in emergency, in order to avoid injury to the trespasser, thus bringing the train to a sudden stop, as claimed by the defendant in error. Of course, it will not be gainsaid that an engineer in charge of a train is guilty of no negligence, if he merely applies the emergency brakes to save the life of a trespasser on the train or on the track, if that course is reasonably necessary, and if the life of the trespasser was not placed in peril by some antecedent negligence of the company. Dorr v. Lehigh Valley R. Co., 211 N. Y. 369, 105 N. E. 652, L. R. A. 1915D, 368, Ann. Cas. 1915C, 763.

But, conceding this to be true, two ques-

tions remain: First, was the emergency brake applied for the purpose stated? and, second, was such application reasonably necessary to save the life or limb of the trespasser? The burden was on the plaintiff in error to justify or excuse the sudden stopping of the train by the use of the emergency brakes, and we are of opinion that the question whether it sustained that burden or not was for the jury, and not for the court. It must be remembered that the witness by whom it was sought to prove the justification or excuse was the negligent party, if there was any negligence, and he was also an interested party to the extent, at least, that he might jeopardize his position with the company if he stopped a passenger train in this manner without any excuse or justification therefor. Under such circumstances we think the question of his credibility and the weight of his testimony was for the jury alone.

In Quock Ting v. United States, 140 U. S. 417, 420, 11 S. Ct. 733, 734, 851 (35 L. Ed. 501), the court said: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying, may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

In Elwood v. Telegraph Co., 45 N. Y. 549, 553 (6 Am. Rep. 140), the court said: "It is undoubtedly the general rule that, where unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption. * * * But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility, * * * and furthermore it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances, as well as by statements of others contrary to his own. In such cases, courts and juries are not bound to refrain from exercising their judgment and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached."

For these reasons, we are of opinion that the questions of fact were properly left to the jury, and the judgment is affirmed.