[Crim. No. 842. Third Appellate District.—March 27, 1925.]

## THE PEOPLE, Respondent, v. FRANK WILLIAMS et al., Defendants; GEORGE O'NEIL, Appellant.

[1] CRIMINAL LAW—ATTEMPT TO COMMIT ROBBERY—RESTRICTED CROSS-EXAMINATION—ABSENCE OF PREJUDICE.—In this prosecution for an attempt to commit robbery, while the trial court might properly have allowed two certain questions asked by counsel for defendants, on cross-examination of the complaining witness, it could not be held that prejudicial error resulted, for, assuming that affirmative answers would have been given by said witness, it was difficult to believe, from an examination of the entire record, that a different result would have been produced by such answers.

[2] ID.—USE OF DIFFERENT NAMES — IMPROPER EXAMINATION—ERROR WITHOUT PREJUDICE. — In such a prosecution, where there is no dispute or issue as to the true name of one of the defendants, it is not proper cross-examination for the prosecution to question said defendant if he had not gone under several different names, and if he had not been arrested before under a stated name, to which questions he replies in the negative and it is also improper to permit an identification expert of the police department to testify that said defendant had passed by the names suggested, but such improper examination will not be held to constitute reversible error where the evidence presented by the prosecution makes out a strong case against the defendants, which, as to some of the vital points, is corroborated by the evidence introduced on behalf

of the defendants, and it does not clearly appear that the ver-
dict of the jury is induced by the admission of the incompetent
testimony.

[3] ID.—ATTEMPT TO TAKE OWN PROPERTY—EVIDENCE—INSTRUCTIONS.
In a prosecution for an attempt to commit robbery, where there
is no evidence in the case in support thereof, it is not error to
refuse to instruct the jury that, if they find from the evidence
that one of the defendants attempted to take property from the
person and possession of the prosecuting witness, and they fur-
ther find that said defendant believed in good faith such prop-
erty to be his own and that he endeavored to take the same
under claim of title in himself, he is not guilty of the crime
charged.

(1) 17 C. J., p. 333, n. 95. (2) 16 C. J., p. 543, n. 39; 17 C. J.,
p. 321, n. 45. (3) 34 Cyc., p. 1813, n. 6.

APPEAL from a judgment of the Superior Court of Sac-
ramento County and from an order denying a new trial.
Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. Hendricksen and A. R. Price for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

JONES, J., *pro tem.*—The defendants were jointly charged
with the crime of attempt to commit robbery; they were
tried jointly, and the jury returned a verdict of guilty as
charged as to each defendant. The defendant Williams
waived time for the imposing of sentence and judgment was
thereupon pronounced against him. The defendant O'Neil
made a motion for new trial, which was denied, and from
the order denying the motion and from the judgment which
followed, he has appealed.

On the evening of October 19, 1924, the defendants were
with one Woolwine, the complaining witness, in the city of
Sacramento. They were patronizing different saloons and
Woolwine became badly intoxicated. After midnight the
three were seen by two policemen on M Street, between
Second and Third Streets, and Woolwine was being sup-
ported by the defendants. Woolwine was pulling back from
his two companions, and then the two officers saw Williams

strike Woolwine a blow in the face, causing the latter to fall to the sidewalk. Officer Gorman testified that Williams looked in the direction he and his fellow-officer were coming; that O'Neil had got on top of Woolwine, and that Williams holloed, "Look out, the bulls are coming!" and started to walk away from his associates. He was placed under arrest by Officer Redding, while Gorman pulled O'Neil off of Woolwine. It was the testimony of Gorman that, as he pulled O'Neil up, the latter's hand came out of Woolwine's trouser pocket, and that he heard Woolwine say, "Take it all, but don't beat me." In rebuttal this same witness was asked the following question by the district attorney: "Now, I will ask you if at any time the defendant O'Neil stated that the reason he was putting his hand, or going through Mr. Woolwine's pocket was to get five dollars that he claimed that Woolwine owed him?" To this question the witness replied: "He did, when we had him at the box up there at Third and L, there was the three standing there together, he says: 'I want this man taken in, too.' I says: 'We will take him as a witness, we have got to take him in.' That is the time he says that he owed him five dollars; he said that is the way he was going to get it." When under cross-examination the appellant denied that he had made the statement incorporated in the question of the district attorney, but admitted that he had told the officer that Woolwine owed him over five dollars; to bring Woolwine along; that he figured he had five dollars coming to him as change.

The defendants did not deny that Williams had knocked Woolwine to the ground, but they testified that Woolwine had become quarrelsome and had struck Williams, who returned the blow and then started to walk away to avoid further trouble. The appellant, according to his testimony, then bent over Woolwine to see if his head was cut, as, in falling, he had hit a glass door and broken the pane; and, while bending over Woolwine, he fell on top of the prostrate man, from which position he was raised to his feet by the officer. He contended that he fell because of his intoxicated condition, but the officer and another witness would not concede that he was under the influence of liquor.

On this appeal the appellant contends that the trial court erred in sustaining objections to two questions asked the complaining witness on cross-examination; in permitting cer-

tain questions to be asked by the district attorney of the defendant Williams; in admitting the testimony of the witness Max P. Fisher; and in refusing to give an instruction requested by the defendants.

[1] While the court might properly have allowed the two questions asked by counsel for defendants, yet it cannot be held that prejudicial error resulted, for, assuming that affirmative answers would have been given by the witness, yet it is difficult to believe, from an examination of the entire record, that a different result would have been produced by such answers.

[2] While under cross-examination the defendant Williams was asked by the district attorney, without objection, if he had not gone under several different names. His answer was "No" as to each name specified. He was then asked, "Weren't you arrested under the name of Johnson in Los Angeles in 1920?" to which he answered "No, no." Counsel for defendants then remarked, "Now, we submit, if your Honor please, that that is improper cross-examination." After several similar questions had been asked, and had been answered in the negative, counsel for defendants then asked that "all the answers—questions and answers be all stricken out," which motion was not granted. The objection of counsel was interposed after the witness had answered. If he had then desired that the answers be not allowed to stand to these particular questions, he should have specified them in his motion.

There can be no question that the questions asked the witness as to his use of assumed names did not, in this case, constitute proper cross-examination, as there was no issue or dispute as to his true name, and there was no other circumstance justifying them. (*People* v. *Mohr,* 157 Cal. 732 [109 Pac. 476] ; *People* v. *Fleming,* 166 Cal. 357 [Ann. Cas. 1915B, 881, 136 Pac. 291].) The impropriety of asking the witness if he had been *arrested* under another name is too evident to call for the citation of authority, and had timely objection and a specific motion to strike been made, counsel's contention that the court had committed error in regard to these matters would have been of greater merit. The situation, however, as to the testimony of the witness Fisher is somewhat different, for that witness, who was the identification expert of the Sacramento police department, was permitted to testify, over the objection of defendants, that

Williams had passed by the names suggested. Some testimony was elicited from this witness on cross-examination which tended to show that the defendant had been arrested under other names. The court endeavored to limit the testimony of the witness to the matter of the use of other names, and, on motion, struck out the answers as to previous arrests. That the court erred in permitting the witness to testify, after timely objection had been made, that Williams had passed under the other names, there can be no doubt, and the question then arises: Did the error cause a miscarriage of justice? The evidence, presented by the prosecution made a strong case against the defendants, and the case was not, so far as a reading of the record discloses, weakened by the explanations given by the accused men; in fact, it may be said that their evidence tended to corroborate the testimony of the witnesses for the prosecution as to some of the vital points in the case. It, therefore, does not clearly appear that the verdict of the jury was induced by the admission of this incompetent testimony and we are constrained to hold that no miscarriage of justice resulted therefrom.

[3] Defendants requested the following instruction, which the court refused to give: "You are instructed that if you find that the defendant O'Neil attempted to take property from the person and possession of the prosecuting witness, and you further find that he believed in good faith such property to be his own and that he endeavored to take the same under claim of title in himself, he is not guilty of the crime charged."

This instruction was properly refused, as there was no evidence in the case to support it. The appellant, in explaining his close proximity to Woolwine when arrested, testified that, when stooping over Woolwine to see if his head was cut, he had fallen over because he was intoxicated. There is, in this explanation, no claim that he was endeavoring to recover property belonging to him, and he denied having made any statement that he was making such an effort, thus repudiating any such claim. No error, then, was committed by the court in refusing to give the offered instruction.

The judgment and the order denying the motion for a new trial are affirmed.

Plummer, J., and Finch, P. J., concurred.