[L. A. No. 10704. In Bank.—July 30, 1931.]

SARAH LINDENBAUM, Respondent, v. L. P. BARBOUR, Appellant.

Culver & Nourse, Swing & Wilson and Fred A. Wilson for Appellant.

Duckworth and Harrison for Respondent.

THE COURT.—This action was instituted by plaintiff against defendant to recover damages for personal injuries sustained by her in a collision between an automobile in which she was riding, owned by her husband and operated by her twenty-one year old son, and an automobile owned and operated by the defendant. The jury returned a verdict of $2,500 in favor of plaintiff and defendant has appealed.

The collision occurred at the intersection of Linden Street and Foothill Boulevard, in the county of San Bernardino, near the town of Rialto. Foothill Boulevard is a public highway running in a general easterly and westerly direction and intersects Linden Street at right angles. Accord-

ing to the map of the intersection at which the accident occurred Foothill Boulevard is 82.5 feet in width with a concrete pavement 18 feet in width in the center thereof, and Linden Street is 60 feet in width and is improved with an oil roadway 12 feet in width in the center. A boulevard stop sign was erected at the northwest corner of the intersection. At the time of the accident the car in which plaintiff was riding was proceeding across Foothill Boulevard in an easterly direction and the defendant, approaching the intersection on Linden Street from the north, was attempting to cross Foothill Boulevard.

There is a decided conflict in the evidence with reference to several factors of the situation, but the verdict of the jury being in favor of the respondent, the evidence most favorable to respondent must, of course, be taken as true upon appeal. Julius Lindenbaum, the twenty-one year old son of respondent, who was driving the car in which respondent was riding, testified that he was driving along Foothill Boulevard at about 25 or 30 miles an hour; that when he was about 60 feet from the west line of the intersection he first saw the appellant's car on Linden Street approaching the intersection; that he reduced the speed of his car as he entered the intersection to 15 miles an hour; that he expected the appellant to stop at the stop sign before entering the boulevard; that when he entered the intersection the front wheels of appellant's car were upon or just approaching the north edge of the paved portion of Foothill Boulevard; that appellant did not stop his car opposite the stop sign; that in order to avoid the collision he slowed up and swerved to the right but that the front left fender of his car came into collision with the right side of appellant's car just to the rear of the door, damaging both cars considerably and injuring respondent. The following facts must, therefore, be taken as true: That both the driver of the respondent's car and the appellant were driving at a lawful rate of speed when they entered the intersection; that appellant was already within the intersection about 32 feet south of the northerly intersection line at the time respondent's car entered the intersection; and that appellant did not stop at the boulevard stop sign.

Appellant contends that the judgment should be reversed for the following reasons: (1) The evidence does not es-

tablish negligence on the part of the appellant; (2) Any negligence of the appellant was not the proximate cause of respondent's injuries; (3) The evidence establishes contributory negligence on the part of respondent's agent; and (4) The court erroneously instructed the jury to the prejudice of the appellant.

The first three grounds are predicated upon the theory that as appellant first entered the intersection traveling at a lawful rate of speed he was entitled to the right of way under section 131 of the California Vehicle Act and that the negligence which was the true proximate cause of the accident was the failure of respondent's driver to yield the right of way to him.

Section 131 of the California Vehicle Act (Stats. 1925, pp. 398, 412) in force at the time of the accident reads as follows: "Right of way. (a) When two vehicles approach an intersection of public highways at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed. (b) The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on said public highway."

This section of the California Vehicle Act has been uniformly interpreted as giving the right of way to the driver who first enters the intersection, providing he is traveling at a lawful speed. (*Keyes* v. *Hawley*, 100 Cal. App. 53 [279 Pac. 674]; *Lipp* v. *Moon*, 100 Cal. App. 618 [280 Pac. 710]; *Enz* v. *Johns*, 112 Cal. App. 1 [296 Pac. 115]; *Couchman* v. *Snelling*, 111 Cal. App. 192 [295 Pac. 845].) Unless, therefore, some other provision of the law changed the rule, the appellant was correct in his assumption that he was entitled to the right of way and that a verdict of the jury predicated upon the theory that he was not entitled to it was erroneous.

It is to be noted, however, that at none of the intersections involved in these cases, was a stop sign maintained. We do not believe that the rule of the right of way as embodied in section 131 of the California Vehicle Act is an invariable rule to the extent that whoever reaches the intersection first thereby automatically secures the right of way and may with impunity proceed across the intersection upon the theory that irrespective of whether or not he has gained the right

of way by failing to stop at a stop signal, he is entitled to the right of way under the general law and whoever fails to yield to him the right of way is guilty of negligence. ■

We are of the opinion that the legislature by section 145 of the California Vehicle Act (Stats. 1925, pp. 398, 414) gave recognition to the fact that, by reason of congested traffic conditions in certain areas, public safety and convenience may demand some additional regulation of the traffic not found in the state law and in order to provide for such elasticity in the traffic regulations left with the local authorities the power to regulate traffic at certain intersections when local conditions justified it.

■ Said section 145 of the California Vehicle Act in so far as it is pertinent to this discussion reads as follows: "Powers of boards of supervisors and legislative bodies of cities. Nothing in this act contained shall be so construed as to prevent boards of supervisors in their respective counties and the legislative bodies of incorporated cities from providing by ordinance for the regulation of traffic by means of traffic or crossing officers or semaphores or other signaling devices on any portion of the public highways where the traffic is heavy and continuous, nor from designating certain public highways as boulevards and requiring that all vehicles shall be stopped before entering or crossing such boulevards, provided all such boulevards are clearly marked or sign-posted to give notice of such fact. . . ."

Pursuant to this provision of the California Vehicle Act the board of supervisors of San Bernardino County passed an ordinance, designated as Ordinance No. 261, for the purpose of regulating traffic along and upon certain boulevards in said county. The pertinent parts of said ordinance are as follows:

"Ordinance No. 261. Adopted November 9, 1925; effective December 9, 1925. An ordinance of the County of San Bernardino regulating motor traffic upon certain highways in the County of San Bernardino and fixing a penalty for the violation thereof.

"Section 1. That . . . all motor vehicles driven upon Foothill boulevard shall have the right of way over vehicles driven on Riverside avenue, Etiwanda avenue, Turner avenue, Archibald avenue and Hellman avenue, . . .

"Section 2. And that all motor vehicles being driven on said . . . Foothill boulevard, . . . shall have the right of way at all intersections of all other roads not herein mentioned when a stop sign is maintained at the side of the roadway near such intersection.

"Section 3. That any and all persons driving and operating motor vehicles and approaching said . . . Foothill boulevard . . . at the intersections hereinabove mentioned in section 1 hereof, and at other intersections upon which a stop sign is maintained shall come to a full stop at a point outside the boundary line of said highways and within 30 feet thereof, and shall not again move until the intersection being approached is clear of traffic and there is sufficient space clear of motor vehicle traffic on either side of said intersection to permit such persons so approaching said intersections to cross same without in any way interfering with the traffic upon said highways so approached as aforesaid."

It is at once apparent that the right of way provisions in this ordinance are in direct conflict with the provisions of section 131 of the California Vehicle Act in force at. the time of the accident in that it gives the right of way to vehicles proceeding along Foothill boulevard at certain specified intersections irrespective of whether or not such vehicles reach the intersection first. And while it is the general rule as stated in *Ex parte Daniels,* 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442], and reaffirmed in *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334], that the power of local authorities over the regulation of traffic upon the streets within their jurisdiction is subordinate to the state legislature and is subject to the general laws of the state, this rule, of course, has no application where, as here, a provision of the same general law expressly stipulates that the general law shall not govern over local regulations but that the local regulations shall be paramount under certain conditions.

Appellant, however, contends that the board of supervisors exceeded the authorization of said section 145 of the California Vehicle Act when it purported to regulate the right of way upon said Foothill Boulevard. According to his theory section 145, in addition to authorizing the local authorities to regulate traffic at intersections by means of traffic officers and mechanical signal devices,

authorized the local authorities to do two things and only two things: to designate certain public highways as boulevards and to require vehicles to stop before entering or crossing the same, provided such boulevards are properly sign-posted. ■■■ In other words, appellant admits that in so far as the ordinance purports .to be a "stop ordinance" it is valid under section 145 of the California Vehicle Act, but insists that in so far as it is a "right of way ordinance" at a boulevard intersection it exceeds the authorization of said section and is to that extent invalid.

We do not think such position is tenable. The patent purpose of designating certain streets as boulevards and requiring vehicles to stop before entering upon such boulevards is to facilitate travel along and upon such streets. Having in mind this purpose, we do not believe that it was the legislative intent to limit the scope of the power of the boards of supervisors to a bare right to designate certain streets as boulevards and to require vehicles to stop before entering thereon. The power to require vehicles to stop before entering a designated street without the right to designate how long the vehicle shall stop before entering, or the right to designate that after stopping the vehicles must enter the boulevard in such a manner as not to interfere with traffic along the boulevard, would be a futile power. If the driver of a vehicle could stop at a stop signal and then immediately proceed into the intersection without regard to the traffic coming down the boulevard except that already in the intersection, the act of stopping would be an idle act, for those using the boulevard would be in no more advantageous position than if there were no stop signs as they would have to be constantly yielding the right of way to drivers crossing the intersection. We are of the opinion, therefore, that the power to regulate the right of way at intersections of boulevards with streets properly posted with stop signs is a necessary concomitant of the power to designate certain streets as boulevards and to require vehicles to stop before entering such boulevards, which power was intended to be reserved to boards of supervisors by section 145 of the California Vehicle Act, hereinbefore quoted.

■■■ This being so it follows that the right of way in the instant case was controlled by Ordinance 261 of the

county of San Bernardino in obedience to which the appellant was required to stop at the stop sign maintained at the intersection, thereby yielding the right of way to the respondent's car. This being so, it further follows that from the evidence hereinbefore set out the jury was justified in finding that the proximate cause of the collision was the failure of the appellant to stop at the stop sign.

It is suggested that inasmuch as there was not introduced in evidence any official authorization by the board of supervisors of San Bernardino County to anyone to erect the stop sign at the intersection in question, that the stop sign was without legal significance and the defendant was under no duty to stop at such stop sign. The only testimony in the record with reference to the erection of the stop sign was the testimony of a witness in answer to the question, ''There is one of those stop signs there at that intersection?'', ''Yes, put up by the Automobile Club.'' Apparently no question was raised in the trial court as to whether or not the stop sign was properly at the intersection and neither respondent nor appellant attempted to prove or disprove that an authorization had been given to the Automobile Club by the board of supervisors to erect stop signs along Foothill Boulevard. In the absence of any question as to the validity of the stop sign at the trial by the appellant, or any controversy as to whether it was properly at the intersection, we do not think it was incumbent upon the respondent to offer in evidence the official authorization for the erection of the sign, and her failure to do so under such circumstances would not justify us in reversing a verdict in her favor.

We are also unable to agree with appellant's contention that the judgment should be reversed by reason of the fact that the court erroneously instructed the jury to the prejudice of the defendant. Appellant objects to an instruction which states that the defendant was ''bound to anticipate that he might meet persons at any point on the highway and he must, in order to avoid a charge of negligence, keep a proper lookout for them . . . '' He argues that the obligation to keep a proper lookout placed a burden upon the defendant which under the facts he was not required to bear, inasmuch as this obligation was inconsistent with the rights flowing from the right of way rule.

It is apparent that in complaining of this instruction appellant is presuming that he was entitled to the right of way at the intersection. As we have before indicated he was not entitled to the right of way, and this is not, therefore, a valid objection to this particular instruction nor to the other instructions complained of, which complaints involve the same assumption.

■ It is true that several of the instructions given are subject to criticism. This is true of the instruction that, ''You are instructed that in deciding this case you will take into consideration all facts and circumstances proven in the case and all reasonable inferences that may be drawn therefrom, and, if, after doing so, you find that the plaintiff has established her case as charged in the complaint, then you will find damages in favor of plaintiff and against the defendant''. It is also true of the instruction that before the jury could find in favor of the defendant on the issue of contributory negligence it must believe from the preponderance of the evidence that ''such contributory negligence, if any, contributed directly and proximately to the happening of the accident . . . '' The former instruction, standing alone, is erroneous for the reason that it does not take into consideration the question of contributory negligence; the latter is erroneous in that it does not take into consideration the fact that the cause of the injuries, although proximate, may be indirect. But considered in conjunction with the other instructions given, we do not feel that they were prejudicial. ■ Appellant also complains that in several instructions the negligence was referred to as the negligence of the plaintiff rather than the negligence of the plaintiff's driver. Inasmuch as in another instruction the jury was instructed that if they found that the collision was caused by the recklessness, carelessness, and negligence of said J. Lindenbaum (plaintiff's driver) that their verdict must be for the defendant, this error was corrected.

■ It is, of course, well established that the instructions must be read and considered as a whole. After a careful examination of the entire instructions, we are of the opinion that whatever errors are to be found therein did not to any appreciable extent prejudice the rights of the appellant. They were, therefore, not sufficient to justify a reversal of the judgment.

The judgment is affirmed.