[L. A. No. 20312. In Bank. July 1, 1948.]

HARRIS STICKEL, Respondent, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation) et al., Appellants.

160

Huntington P. Bledsoe for Appellants.

Edgar B. Hervey and Henry F. Walker for Respondent.

SCHAUER, J.—Plaintiff Harris Stickel sued to recover damages for the death of his wife and for his own personal injuries resulting from a collision between a bus of defendant railway company driven by defendant Amos, its employe, and a pickup truck in which plaintiff was a passenger and which was being driven by Mrs. Stickel. Defendants appeal from a judgment pursuant to a jury verdict for plaintiff and from an order denying their motion for judgment notwithstanding the verdict. We have concluded that their many claims of error do not justify a reversal.

The accident occurred at about 10:40 p. m. at the intersection of Twelfth and K Streets in the city of San Diego. The bus was proceeding south on Twelfth Street. According to defendant Amos its speed was between 22 and 24 miles an hour. Mrs. Stickel was driving west on K Street. The following evidence supports the verdict: Mrs. Stickel stopped at the east curb line of the intersection, looked to her right, shifted gears, and drove into the intersection. She did not look to her right again. The truck was nearly across the intersection, traveling approximately 6 and not more than 12 miles an hour, when Mr. Stickel, who had not been "paying much attention" to traffic, "looked around and there were bright lights in front of our cab and that is the last thing I remember"; Mrs. Stickel "must have seen it [the bus] because she tried to step on the gas." (■ There was no motion to strike this opinion testimony of plaintiff; therefore it is to be considered in support of the verdict. 2 Cal.Jur. § 473, p. 804.) The bus driver sounded no warning. The left front of the bus struck the right door of the cab of the truck. The force of the impact was such that the bus pushed the truck nearly 170 feet from the point of impact. Two police officers arrived at the scene of the accident about 10 minutes after the collision. Shortly thereafter Amos, the bus driver, told them that "he did not see the Chevrolet [plaintiff's pickup truck] at all until after he hit it, . . . until he felt the glass in his face." (■ This admission by Amos was received in evidence as against both defendants without objection. Defendants' objection to other evidence of Amos' admission, on the ground that it was "hearsay," was "sustained as to the defendant . . . Railway Company and overruled as to the defendant Amos," but there was no request that the jury be instructed that the evidence was not binding on the railway company. In any event the lack of such instruction

could not have prejudiced defendant company because the finding that Amos was negligent must be upheld, and any negligence of Amos is imputed to the company.)

The evidence above summarized is sufficient to support an inference that Amos' negligent failure to watch for traffic crossing Twelfth Street was the legal cause of the collision.

It does not, as defendants urge, establish as a matter of law that Mrs. Stickel negligently failed to yield the right of way as required by section 552 of the Vehicle Code and that such negligence contributed to cause the accident. Section 552 provides, "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway." The jury could have decided that when Mrs. Stickel started across the intersection she reasonably believed that the bus was not an immediate hazard.

Defendants introduced evidence tending to show that both Mr. and Mrs. Stickel were intoxicated at the time of the accident. This evidence consists of testimony that the Stickels were in a barroom about half an hour before the accident, that Mrs. Stickel was then obviously intoxicated and Mr. Stickel was drinking, and that after the accident the odor of alcohol was on the breaths of Mr. and Mrs. Stickel. The evidence was introduced in support of the pleaded defenses that negligence of Mrs. Stickel proximately contributed to cause the accident and that plaintiff himself was negligent in riding with Mrs. Stickel when he knew or should have known that she was intoxicated and could not and would not drive with due care. Plaintiff testified on cross-examination that neither he nor his wife was in the above mentioned barroom on the day or night of the collision. He was not asked whether he or Mrs. Stickel was intoxicated or had been drinking prior to the accident. Defendants complain that the trial court refused to permit them to introduce other evidence which, they claim, would have tended to show that plaintiff and his wife were intoxicated at the time of the accident. In this respect, the record shows, defendants at no time made a proper offer

of admissible evidence; after several colloquies as to the sufficiency of defendants' vague offers of proof and the admissibility of certain evidence which defendants suggested they wished to offer,* the trial court said, ''I am not convinced that the offer of proof, or the cross-examination indicated, is proper. ... We will reserve that matter for argument''; and defendants never again made an offer of proof, sought to argue, or asked a question of any witness concerning such evidence. ''A mere general offer of proof without producing the witness or stating the evidence whereby the fact in issue is to be

---

*Such colloquies were in material part as follows:

''Mr. Bledsoe [counsel for defendant]: ... I want to refer to numerous arrests [of plaintiff], particularly in this City of drunkenness and drunk driving. . .

''The Court: If you are able to prove, or if you wish to make inquiry as to whether or not he had been drinking shortly prior to this occurrence, in an effort to establish his capacity for observation at the time this took place, I would say yes, but whether he had been drinking a week before or had been arrested 50 times before for drunkenness, unless it is connected up with the physical condition at the time of the occurrence, I don't think it is impeachment.

''Mr. Bledsoe: He [plaintiff] says he was not drinking on this night and never drinks. [Plaintiff had not so testified and was not thereafter asked whether he had been drinking on the night of the accident or whether he had ever drunk intoxicating liquor.] I can show what he says is not true. . . .

''Mr. Hervey [counsel for plaintiff]: Whether he ever drinks or not does not make any difference.

''The Court: I think that is correct. If you have authorities for any of those contentions I want to hear them, but in the absence of any authority I am relying on my general ideas of materiality. . . .

''Mr. Hervey: ... It is entirely immaterial whether he drank or not on any other occasions. . . .

''[Thereupon the noon recess was taken. Thereafter the following colloquy was had:]

''Mr. Bledsoe: He says in the deposition that he does not drink. [There is no evidence to this effect in the record.] I would then have to ask him some questions, to lay a foundation for impeachment, which would be as to the number of times he has been arrested for drunk driving, disorderly conduct, and the fact that he does drink and has been seen nightly in different bars in an intoxicated condition. I want to ask the questions before the jury if they are proper. . . .

''The Court: You can make your offer of proof now and we will defer ruling on it until tomorrow. . . .

''Mr. Bledsoe [made and there was discussion as to offers of proof concerning matters other than intoxication.] . . .

''The Court: What about this offer to prove the use of intoxicants, Mr. Hervey?

''Mr. Hervey: I certainly object to that . . . I would prefer that your Honor did not indicate in the record that your Honor would sustain an objection to something unless it has been stated definitely what it is going to be. . . . If counsel will definitely state what he would ask the witness then I would like to state any objections I might have and your Honor may then rule on it if your Honor sees

proved, or, if the witness be present, without putting a question to him in such form as to give opportunity for objection, is not correct trial procedure and it affords no ground for appeal. [Citations.]'' (*Douillard* v. *Woodd* (1942), 20 Cal. 2d 665, 670 [128 P.2d 6].)

Defendants complain that ''The court refused to permit the witness Stickel to be impeached in regard to his identity and to the date and fact of his marriage to deceased.'' But defendants do not claim that plaintiff is not the man who sustained the injury in question and their answer admits that at the time of the accident deceased was the wife

---

fit, but I don't think counsel ought to simply expect your Honor to rule on a proposition like this when counsel makes a statement that he would attempt . . . to prove that he drinks. . . . Counsel might ask this question of the witness: Had you been drinking that day or had your wife been drinking that day—but if counsel means by his offer that he would seek to prove this man's habit of using intoxicating liquors at other and unrelated times and occasions, . . . I would object on the ground that it is incompetent, irrelevant and immaterial and upon the ground that it was an attempt to impeach the witness upon an immaterial matter.

''Mr. Bledsoe: The purpose in making the offer was to show . . . that prior to the date of the accident that plaintiff, Harris Stickel, and Essie Stickel, deceased, were addicted to the use of intoxicating liquors in excess and had been for some period of time prior thereto, for a period of years, and that the witness, when he states as he did in his deposition that he does not drink, is not telling the truth; that the use of intoxicating liquors to the extent the witnesses [unidentified] would state would, of course, be material as to the habits . . .

''The Court: Then you wish to develop a continuous course of excessive use of intoxicating liquor? That is what your final objective is?

''Mr. Bledsoe: That is it. . . .

''The Court: . . . You didn't ask him [plaintiff] the impeaching question which might lay the foundation.

''Mr. Bledsoe: I haven't asked anything.

''The Court: Let us hear exactly what you want to ask.

''Mr. Bledsoe: I want to ask him, first, does he drink at any time. If he indicated in the deposition 'I don't drink very much, I take a beer occasionally' I am assuming that that is what he is going to testify to here. Then I would like to ask him a question to lay the foundation to impeach him, to call bartenders, and so forth, to say that what he testified to on the stand is not true. This is prior to the date of the accident, days before and months before. I also wish to show that on occasions in court, he has been arrested twice for drunk driving, once for drunkenness, and once for drunk and disorderly conduct within— since the year 1934—here in this city. . . .

''Mr. Hervey: Well, we will object to any evidence of his being arrested for misdemeanors, and we would also object to any . . . attempt to impeach him on an immaterial matter, whether he on other unrelated occasions drank, whether to excess or otherwise.

''Mr. Bledsoe: I might say that we would also offer evidence that he pled [sic] guilty to those charges which were filed.

''The Court: . . . I am not convinced that the offer of proof . . . is proper . . . We will reserve that matter for argument.''

of plaintiff. It is apparent from colloquies of defendants' counsel with the trial court and from their briefs that their asserted desire to inquire into plaintiff's identity and the fact of his marriage was actually a desire to discredit plaintiff in an improper manner. Their real complaint is that they were not permitted to show that Stickel had used other names and had been arrested on various charges and convicted of misdemeanors under such other names. Such evidence was not admissible. (*People* v. *Arlington* (1899), 123 Cal. 356, 357 [55 P. 1003]; *People* v. *Mohr* (1910), 157 Cal. 732, 734 [109 P. 476]; *People* v. *Fleming* (1913), 166 Cal. 357, 380 [136 P. 291, Ann.Cas. 1915B 881]; *People* v. *Williams* (1925), 72 Cal.App. 52, 55 [236 P. 355]; *People* v. *Adams* (1926), 76 Cal.App. 178, 184-185 [244 P. 106].)

■ On cross-examination of a police officer who had testified to the above mentioned admission of Amos that he did not see the pickup truck, defendants sought to show that at the scene of the accident the officer made in his notebook the notation, "Cause of accident: Auto ran through stop sign." The trial court properly sustained an objection to such evidence on the ground that the notation was but an opinion of the officer arrived at after he had interviewed unidentified persons at the scene of the accident. ■ Defendants now assert that the notation was a record of a statement made by Amos and was, therefore, admissible to impeach the officer. The record does not support this assertion; on the contrary defendants' counsel stated to the trial court that by evidence of such notation "I want to show at the time, *before Mr. Amos said anything,* that he [the officer] put down the cause of the accident." (Italics added.)

■ Defendants assert that they were improperly curtailed in their examination of their witness Lindamood. The record reveals that after objections to several leading questions had been sustained and several answers of the witness which were not responsive or not statements of fact had been stricken, defendants abandoned the line of inquiry which they now claim was foreclosed by the court. Defendants ceased their attempts to elicit the testimony even though plaintiff's counsel stated that he had no objection thereto.

■ Defendants complain both because a written statement of Lindamood, made three days before the trial, was not received in evidence when offered by defendants for the purpose (not stated to the trial court) of rehabilitating Lin-

damood after his cross-examination and because such statement was subsequently received when it was offered by plaintiff "for impeachment." The statement has no impeaching effect (see *Froeming* v. *Stockton Electric R. R. Co.* (1915), 171 Cal. 401, 408-411 [153 P. 712, Ann.Cas. 1918B 408]). But defendants have no ground to complain of its admission since their counsel said, when it was offered by plaintiff, that he had no objection to its receipt. And defendants have no ground to complain of the original refusal to admit the statement, because its rehabilitory effect, if any, was the same whatever the stated purpose for which it was offered in evidence by plaintiff.

Defendants assert that the trial court, over objection, permitted plaintiff's counsel deliberately to misread a question and answer from a deposition of defendant Amos during his cross-examination of Amos and refused to permit Amos to explain "discrepancies" between such answer in the deposition and his testimony at the trial. The record shows that plaintiff's counsel correctly read the question and answer, that there were no "discrepancies" between the answer as read and Amos' testimony, and that explanation of the answer was made on Amos' redirect examination.

 Defendants contend that the italicized portions of the following instruction are erroneous: "A person who, himself, is exercising ordinary care, has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus, it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another. *However, an exception should be noted:* The rights just defined do not exist when it is *reasonably apparent* to one, *or in the exercise of ordinary care would be apparent* to him, that another is not going to perform his duty. [One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care.]" (Cal. Jury Instructions, Civil [B.A.J.I., 1943 ed.], Instruction 138. Italics defendants'.) According to defendants, the italicized portions of the instruction might be misunderstood to impose a duty to anticipate negligence on the part of others. The so-called "exception" does not impose such a duty. It is but a statement as to that common type of negligence, the unreasonable failure to observe what is going on about one, including the negli-

gence of others. "One may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed." (*Edlund* v. *Los Angeles Ry. Co.* (1936), 14 Cal. App.2d 673, 675 [58 P.2d 928].)

Defendants further complain of an instruction that "It is the duty of the driver or operator of any kind of vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision." (Cal. Jury Instructions, Civil [B.A.J.I., 1943 ed.], Instruction 138-A.) They argue that the instruction might be misunderstood to impose the absolute duty "to avoid a collision"; that the jury might believe that the qualifying words, "to exercise ordinary care," relate only to the duty "to avoid placing himself or others in danger" and not to the duty "to avoid a collision." The instruction is subject to such possible construction and, therefore, to criticism. (See *Anderson* v. *Freis* (1943), 61 Cal.App.2d 159, 164-165 [142 P.2d 330].) However, the jury did not so understand it for by their verdict for plaintiff (who, they were instructed, could not recover if they found that Mrs. Stickel was negligent and that such negligence contributed to cause the collision) they impliedly found that, although Mrs. Stickel did not "avoid a collision," she was not guilty of negligence proximately contributing to cause such collision.

The court refused an instruction, proposed by defendants, to the effect that if Mrs. Stickel was intoxicated and such intoxication was a proximate cause of the accident, and plaintiff knew or should have known of such intoxication, then his riding with her constituted negligence, and he cannot recover. Defendants complain that the refusal of this instruction deprived them of consideration of their pleaded affirmative defense that plaintiff was himself contributively negligent. But the refusal could not have prejudiced defendants. Plaintiff could not have been found contributively negligent in riding with a driver who, as the jury impliedly found (since, having been instructed that negligence of Mrs. Stickel was imputed to plaintiff, they found for plaintiff), was not herself legally responsible for causing such collision.

Defendants complain because the trial court refused to give the following instruction requested by them: "It is immaterial which vehicle enters the intersection first. The vehicle entering or crossing a through highway has no pref-

erence or is given no right of way over a vehicle traveling on a through highway merely because the vehicle crossing or entering the through highway might have entered the intersection first.'' The first sentence of the proposed instruction, standing alone, is manifestly erroneous. The relative positions of the vehicles before they collided are of course material where the negligence of the respective drivers is in issue. The jury were correctly instructed as to the respective rights and duties of drivers traveling on and across a through highway; it was not suggested that one crossing such a highway might have the right of way ''merely because . . . [he] might have entered the intersection first''; and the trial court correctly refused to distract the jury by giving the unnecessary instruction.

 The trial court refused the following instruction proposed by defendants: ''The lawful speed limit for a bus or vehicle traveling south on 12th Street at the place where it intersects with 'K' Street is and was at the time of the accident 25 miles per hour, unless, it has been clearly proven that such speed of 25 miles per hour was greater than was reasonable or prudent for a person operating a vehicle on 12th Street in a southerly direction at the time and place of the accident, having due regard for the traffic on, and the surface and width of the highway, and the fact that 12th Street at the time and place of the accident was an arterial, or through highway, but in no event at a speed which endangers the safety of persons or property.'' This instruction is an incomplete, misleading, and grammatically peculiar attempt to state the codified speed laws which applied to the bus. (Veh. Code, § 510 [basic speed law], § 511 [prima facie speed limits], § 513 [proof of speed in excess of prima facie limit does not establish negligence as a matter of law].)

 Defendants argue that they were prejudiced because the jury were not told of the speed limit of 25 miles an hour. But 25 miles an hour was the ''prima facie,'' not, as stated in the proposed instruction, the ''lawful'' speed limit. Nor does it appear that the jury would have been aided in their deliberation or probably would have reached a different result if the trial court had corrected the instruction and informed them of the ''prima facie'' speed limit, for whether defendant Amos was or was not exceeding such limit would not, under the circumstances shown, answer the question whether he was negligent.

 Defendants urge that the trial court erred in refusing the following requested instruction: "Section 501 of the Vehicle Code . . . read, in part, as follows: 'Any person who, while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person, is guilty of a felony.'

"Section 502 of the Vehicle Code . . . read, in part, as follows: 'It is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway.'

"If you should find from the evidence that the decedent, Essie Stickel, conducted herself in violation of Section 501 or 502 of the Vehicle Code . . ., you are instructed that such conduct constituted negligence as a matter of law, and if you further find that such violation of law by Essie Stickel contributed in some degree as a proximate cause of the accident, the plaintiffs cannot recover and your verdict must be for the defendants."

The refusal to instruct as to the criminal responsibility of an intoxicated driver was correct. (See *Greening* v. *Ford* (1932), 127 Cal.App. 462 [16 P.2d 143], where, after injection into a civil action of the question of criminal responsibility, the jury brought in a verdict of "for the defendant Not Guilty"; on this ground a new trial was granted.) An instruction specifically directed to drunken driving as negligence could have been given but, in the circumstances, the failure of the court to modify and give defendants' proposed instruction does not appear to have prejudiced them. The jury were adequately instructed in general terms as to negligence, contributory negligence and proximate cause. To assume that they did not consider the question of Mrs. Stickel's asserted intoxication under these general instructions would be to attribute to the jury a lack of ordinary intelligence or deliberate violation of duty.

Defendants are mistaken in their assertion that other instructions requested by them are not fully covered by the instructions given.

Defendants assert that the manner in which plaintiff's counsel cross-examined certain of defendants' witnesses amounted to prejudicial misconduct. Such cross-examination was searching and even rigorous but we cannot agree that

it was conducted in a manner which prejudiced defendants' substantial rights.

On motion for new trial defendants presented three affidavits which, they claim, show misconduct on the part of two jurors; i. e., that such jurors made certain personal investigations which influenced the verdict. Two of the affidavits, by an employe of defendant company whose capacity is not averred, are upon information and belief. The third, by a bus operator of defendant company, concerns the conduct of "a gray-haired woman of about fifty years of age wearing a gray suit and hat [who] informed affiant that she was a juror then hearing a 'death case' "; it is not shown that this woman was a juror in the present case. Therefore, the affidavits were insufficient for the purpose for which they were offered. (*People* v. *Findley* (1901), 132 Cal. 301, 308 [64 P. 472]; *Gay* v. *Torrance* (1904), 145 Cal. 144, 152 [78 P. 540]; *Kimic* v. *San Jose-Los Gatos etc. Ry. Co.* (1909), 156 Cal. 379, 396 [104 P. 986].)

Defendants' contention that the evidence shows an amount of damages less than that awarded for medical expenses, etc., cannot be considered since they stipulated "that defendants will present no question on said appeal concerning the amount or the excessiveness of the damages."

For the reasons above stated the judgment and order appealed from are affirmed. Defendants' purported appeal from the verdict is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

In my opinion the verdict is not supported by the evidence. The bus driver proceeding on a through highway had the right to assume that Mrs. Stickel would yield the right of way. (Veh. Code, § 552; *Ambra* v. *Woolsey*, 55 Cal.App.2d 104, 106 [130 P.2d 152]; *Zwerin* v. *Riverside Cement Co.*, 52 Cal.App2d 715, 718-719 [126 P.2d 920]; *Gritsch* v. *Pickwick Stages System*, 131 Cal.App. 774, 780 [22 P.2d 554]; *Inouye* v. *McCall*, 35 Cal.App.2d 634, 638 [96 P.2d 386]; *Silva* v. *Market Street Ry. Co.*, 50 Cal.App.2d 796, 800 [123 P.2d 904]; see *Lindenbaum* v. *Barbour*, 213 Cal. 277, 285-286 [2 P.2d 161]). I find nothing in the evidence from which an inference could be drawn that the bus was not so close

to the intersection as to constitute an immediate hazard and therefore cannot agree that Mrs. Stickel could reasonably believe that there was not such a hazard.

Even if it is assumed that the jury could determine that the bus driver was negligent when he entered the intersection, Mrs. Stickel was guilty of contributory negligence as a matter of law, if she was under the influence of intoxicating liquor while driving the truck, and the trial court's refusal to give defendants' instruction to that effect was prejudicial error.

Defendants called several witnesses, who testified that Mr. and Mrs. Stickel were intoxicated on the evening of the collision, which occurred at about 10:40 p.m. Harry Walker testified that he was on duty as bartender at the Last Roundup Cafe at Encanto on that evening; that the Stickels entered the bar sometime between 9 and 10 p.m.; that they came directly to the bar and asked for a drink; that Mrs. Stickel "was hilarious and in a happy frame of mind and a little bit on the staggering side"; that he therefore refused to serve her liquor and instructed the waitresses not to serve her; that Mrs. Stickel said "she would get a drink anyway" and mingled with other customers; and that the Stickels left the bar 20 or 30 minutes after their arrival. Leon Cesmat testified that he was employed at the Last Roundup Cafe and that his duties included keeping order in the cafe; that on the night of the accident between 9 and 10 p.m. he saw Mrs. Stickel in the cafe talking to two sailors; that Mrs. Stickel was "pretty well intoxicated" and that he ordered her out upon instructions of the proprietress. Sandra Slayton testified that she was part owner and manager of the Last Roundup Cafe; that on the night of the accident she saw the Stickels at the cafe shortly before 10 p.m.; that Mrs. Stickel was intoxicated; that Mr. Stickel's condition "wasn't so bad"; that Mrs. Stickel "was walking from table to table picking up drinks and drinking them"; that Mrs. Stickel did not leave the cafe when the witness asked her to and that she therefore asked the doorman to make her leave. George F. Evans testified that he went with an ambulance to the scene of the accident in line of duty as a police officer; that there was a slight odor of alcohol at the scene of the accident, and a more noticeable one in the ambulance; and that he smelled alcohol on Mrs. Stickel's breath. Harry Kemp, another police officer, testified that he drove the ambulance to the hospital while Evans sat in the back with the Stickels; that he helped

carry them out of the ambulance and at that time smelled alcohol on both of them.

The trial court refused to give the following instruction requested by defendants:

"Section 501 of the Vehicle Code of the State of California in force and effect at the time of the accident reads, in part, as follows: 'Any person who, while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglets any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person, is guilty of a felony . . .' Section 502 of the Vehicle Code of the State of California in force and effect at the time of the accident reads, in part, as follows: 'It is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway.' If you should find from the evidence that the decedent, Essie Stickel, conducted herself in violation of Section 501 or 502 of the Vehicle Code of the State of California, just read to you, you are instructed that such conduct constituted negligence as a matter of law, and if you further find that such violation of law by Essie Stickel contributed in some degree as a proximate cause to the accident, the plaintiffs cannot recover and your verdict must be for the defendants."*

The majority opinion holds that the failure to give this instruction could not have prejudiced defendants, on the grounds that the jury were adequately instructed in general terms as to negligence, contributory negligence, and proximate cause, and that they impliedly found that Mrs. Stickel was not legally responsible for causing the collision. "To assume that they did not consider the question of Mrs. Stickel's asserted intoxication under these general instructions would be to attribute to the jury a lack of ordinary intelligence or deliberate violation of duty."

Although the jury may have considered the question of Mrs. Stickel's alleged intoxication, they were not instructed as to the legal effect of such intoxication on her responsibility for the accident. The general instructions left them free to formu-

---

*Section 501 is violated by anyone who engages in negligent conduct in addition to driving a motor vehicle while under the influence of intoxicating liquor, but such driving is in itself a volation of section 502. Reference to section 501 was therefore superfluous, but it was not erroneous. If the jury had found that Mrs. Stickel violated section 502, they would necessarily have determined that plaintiffs could not recover, and it would be immaterial whether she also violated section 501.

late their own standard of conduct and to approve conduct that the Legislature has declared so hazardous as to call for criminal punishment. They were bound to conclude from these instructions that Mrs. Stickel's alleged intoxication was only one circumstance to be considered in determining whether her conduct contributed to the injuries complained of. In the absence of a statute like section 502 such instructions might have been adequate. (*Coakley* v. *Ajuria*, 209 Cal. 745, 752 [290 P. 33] ; *Emery* v. *Los Angeles Ry. Co.*, 61 Cal.App.2d 455, 461 [143 P.2d 112] ; see 4 Sherman & Redfield on Negligence (rev. ed.), § 700.) Section 502, however, prohibits persons from engaging in the ultrahazardous activity of driving a motor vehicle on a highway while under the influence of intoxicating liquor, thereby setting a statutory standard of conduct. If that standard is applicable, a violation thereof constitutes negligence as a matter of law. ''An act or failure to act below the statutory standard is negligence *per se*, or negligence as a matter of law.'' (*Satterlee* v. *Orange Glenn School District*,† 29 Cal.2d 581, 588 [177 P.2d 279], and cases there cited.) In determining whether the statutory standard is applicable, the court must determine whether the persons injured were within a class that the statute was designed to protect, and whether the injury arose from a hazard of the kind the statute was designed to guard against. (*De Haen* v. *Rockwood Sprinkler Co.*, 258 N.Y. 350 [179 N.E. 764] ; Restatement, Torts, § 286 ; Prosser, Torts, 269.)

Mr. and Mrs. Stickel as users of the highway were clearly within the class of persons for whose protection section 502 of the Vehicle Code was enacted. It is likewise clear that their injuries arose from a type of hazard against which the statute is directed. In *Johnston* v. *Brewer*, 40 Cal.App.2d 583, 587 [105 P.2d 365], it was held that the jury was correctly instructed that a pedestrian, who was struck by an automobile, ''was guilty of negligence as a matter of law'' in being on a street or highway while intoxicated in violation of a municipal ordinance. ''It is common knowledge that one whose senses have been dulled by intoxicants is unable to control his bodily movements in a normal manner and as a result the presence

---

†The holding in the majority opinion in that case that the jury can determine from the evidence whether deviation from a statutory standard is excused by the extraordinary circumstances of a particular case is not involved in the present case. There is no evidence of any justification for Mrs. Stickel's driving the automobile while under the influence of intoxicating liquor.

of such persons upon the public streets and highways is dangerous not only to themselves but to others who are lawfully using the streets and highways. It is evident that the ordinance was enacted in the interests of the general welfare for the dual purpose of protecting intoxicated persons from the results of their own folly and of protecting the general public from the dangers and other evils attendant upon the presence of such persons upon the streets and highways . . ." Certainly the statute involved in this case has the same purpose, for the dangers attendant upon the presence of an intoxicated person on a highway, particularly at an intersection, are multiplied if he is operating a motor vehicle. (*Packard* v. *O'Neil*, 45 Idaho 427 [262 P. 881, 56 A.L.R. 317]; *Wise* v. *Schneider*, 205 Ala. 537 [88 So. 662]; *Lincoln Taxicab Co.* v. *Smith*, 88 Misc. 9 [150 N.Y.S. 86].)

Section 502, however, does not deprive an intoxicated driver of all protection against the wrongful act of another. If the disabilities of the driver arising from intoxication, such as impairment of his percepton and his reactions to the dangers of the road, did not expose him to a foreseeable risk of injury through such a wrongful act, section 502 does not govern his civil responsibilities. Certainly in the present case, if Mrs. Stickel was intoxicated, the consequent impairment of her driving ability exposed her to a foreseeable risk of injury through the negligence of defendants' bus driver. It cannot reasonably be said that the possibility that other vehicles approaching on the through highway would negligently enter the intersection was so remote that it could not be regarded as part of the risk. Anyone operating a motor vehicle on a highway must realize that he cannot drive blindly into an intersection in the confidence that other vehicles will yield the right of way. (*Donat* v. *Dillon*, 192 Cal. 426, 429 [221 P. 193]; see Prosser, Torts, 245 and cases there cited.) Clearly, if Mrs. Stickel was intoxicated, her belief as to the chances she could take cannot serve to justify her conduct. Whatever the extent of the right of a driver of a motor vehicle to assume that others will use due care, an intoxicated driver, who has impaired his ability to appreciate the dangers of the road, particularly of an intersection, is engaged in an ultrahazardous activity that necessarily involves a risk of serious harm to himself as well as well as to others. A motor vehicle operated by an intoxicated person is an instrument of death and destruction, and it is a matter of chance when or whether an accident will occur and to whom, and how serious it will be.

Even if momentarily the operator's reactions are those of a sober person, he is likely to revert to the erratic reactions of those who are not. His momentary seizure of sober behaviour may in itself be erratic and is certainly dangerous in lulling others into believing that he has full possession of his senses. Conduct involving undue risk of harm to one's self as well as to others, including conduct prohibited by statute, constitutes contributory negligence. (*Meincke* v. *Oakland Garage, Inc.*, 11 Cal.2d 255, 256 [79 P.2d 91]; *Koeppel* v. *Daluiso*, 118 Cal.App. 442, 446 [5 P.2d 457]; see Restatement, Torts, §§ 469, 475.)

It is contended, however, that the judgment must be affirmed on the ground that the jury has impliedly found that Mrs. Stickel was not legally responsible for causing the collision, in other words, that her conduct was not a ''proximate'' cause thereof. This contention may mean (1) that Mrs. Stickel's conduct was not in fact a cause of the collision, or (2) that the harm therefrom does not fall within the limits of her legal responsibility for the consequences of her conduct. That her driving the truck into the intersection was a substantial factor in bringing about the collision and therefore in fact contributed to the accident there can be no doubt. (See Restatement, Torts, § 431.) With that determined, the question of causation is settled. It remains only to determine whether the injury falls within the limits of her responsibility for the consequences of her conduct. (See Prosser, Torts, pp. 311-313.) In my opinion, that determination is made once it is established that her conduct was wrongful with respect to her own safety and that of others on the highway; for the risk reasonably to be foreseen not only creates the responsibility but defines its limits. (See concurring opinion in *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 220 [157 P.2d 372, 158 A.L.R. 872], and authorities there cited.) A decision, therefore, that Mrs. Stickel was not legally responsible for causing the collision or that her conduct was not the proximate cause thereof means only that she was not negligent. If she was driving while intoxicated, she was guilty of negligence as a matter of law, and the jury should have been so instructed.

Appellants' petition for a rehearing was denied July 29, 1948, and opinion was modified to read as above. Traynor, J., voted for a rehearing.