[Civ. No. 1766. Fourth Appellate District.—June 26, 1936.]

EDWARD LONG, Respondent, v. EUEL BEVERS, Appellant.

48

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellant.

G. R. Lovejoy for Respondent.

MARKS, J.—This is an appeal from a judgment awarding plaintiff damages suffered by reason of the death of James M. Long, his minor son.

Defendant urges three grounds for a reversal of the judgment: (1) that the evidence shows no negligence on his part; (2) that it shows contributory negligence as a matter of law on the part of James; (3) errors of the trial court in rulings on the admissibility of evidence.

On August 19, 1934, James M. Long was of the age of thirteen years. He was in the seventh grade in junior high school and was an intelligent, quick-minded and well-developed youth. He was the possessor of a bicycle. His father on numerous occasions had told him not to hang onto the sides of vehicles when riding his bicycle on public roads and had explained to him the danger of injury which is incident to such conduct.

On August 19th, James and John Bach, his youthful friend, left Fresno on their bicycles and traveled to Selma over Highway Number 99. They started their return journey from that city about 2 o'clock in the afternoon. When a short distance north of Selma they took hold of the right side of the body of a truck which was traveling northerly on Highway Number 99. James took hold just to the rear of the driver's cab. John was holding on about three feet from the rear end. The truck body was wide and occupied the major portion of the east half of the paved portion of the highway. The accident happened about one and one-half miles north of Selma at a point where a railroad spur or switch crosses Highway Number 99.

At the place of the accident there is a paved strip twenty feet wide in the highway, with a four-foot hard oiled shoulder on the easterly side of the pavement, and about six feet of dirt roadway between the shoulder and a fence along a railroad right of way paralleling the highway.

The two boys were riding on their bicycles with the wheels following the dividing line between the pavement and the oiled shoulder. The truck was traveling at a speed of about thirty miles an hour. As it approached the railroad crossing James released his hold on the truck body and fell onto the oiled shoulder. His badly crushed body was found on

the dirt portion of the roadway about halfway between the easterly edge of the oiled shoulder and the fence. John retained his hold on the truck until he had passed over the railroad crossing. He rode on past the point where James had fallen and was between the truck and James as the truck proceeded north. Because of this fact, and the further fact that several witnesses testified that the truck did not run over James, it is well established that he was not crushed by that vehicle.

Defendant, a young man of about eighteen years of age, had been following the truck at a distance of about thirty feet for about a mile before the place of the accident. With him were riding two friends and a girl hitch-hiker. Neither this girl nor the truck driver were present at the trial as their identities were unknown.

Defendant testified that while following the truck he had been driving his automobile at about the center of the easterly half of the paved portion of Highway Number 99. Both he, his two friends, and another witness testified that his automobile did not run over nor come into contact with James. No witness contradicted this testimony.

Witnesses described the marks on James' body as follows: That a straight line of bruises or contusions extended from his right hand along his right arm, across the upper right quadrant of his chest, his neck, chin and head; that his chest, jaw and skull were crushed; that the bruises or contusions had an extreme width of about four and one-half inches and were the repetition of a symmetrical design of separate marks that left imprints in his skin from his hand to at least his neck. Without trying further to describe these marks it is sufficient to say that this evidence furnished sufficient ground for the conclusion evidently reached by the trial court that they were made by the all-weather tread of the tire of a motor vehicle.

■ The contention of defendant that the evidence is insufficient to support the findings and judgment because of the lack of proof of negligence on his part is divided into two phases; first, that there is no evidence that his automobile struck or injured James, and second, if it be assumed that it did strike him, there is still no proof of any negligence on his part. The evidence of the tire marks on James' body is evidence that he was run over by a motor vehicle. It is

clear that the truck did not run over him. Defendant's car was the only other vehicle in the vicinity. These facts support the inference that it caused the injury. Of course this evidence is contradicted by the testimony of several witnesses that no tire of the Bevers car passed over James or came near to him. This state of the record merely produces a conflict in the evidence. The conclusion of the trial court on conflicting evidence cannot be disturbed on appeal where there is material and competent evidence supporting it.

 There is sufficient evidence in the record to support the finding that defendant was negligent and that his negligence was the proximate cause of the injury to James. The easterly half of the pavement was ten feet wide. Defendant testified that he was driving his car along the center of this half. James fell onto the oiled shoulder and evidently slid easterly to the center of the six-foot dirt portion of the road where he was run over. He was seven feet from the easterly side of the pavement. In order to run over James it was necessary for defendant to change the direction of his car and veer more than eight feet to his right. Had he continued on the course he had been following he could not have run over the boy. For an automobile driver with any degree of driving experience or competence to see a boy fall more than thirty feet in front of him and come to rest at least seven feet away from the pavement upon which he was driving, and then to turn his car so that it ran over this boy, is certainly such proof of the lack of any care or caution on the part of the driver that the trial court could base a finding of negligence upon it. When this evidence is accepted as true it is proof of negligence of high degree in that the driver failed to exercise any care for the safety of the boy. It shows a positive act of negligence which caused the injury and death of James.

 The trial court found that James was not negligent and that "The said injuries to the said James M. Long were not occasioned or contributed to and were not the proximate result of any negligence upon the part of the said James M. Long."

Defendant attacks this finding as not supported by the evidence and as contrary to all the evidence in the case. He argues that James' father had frequently told him not to hang onto motor vehicles while riding his bicycle and had

fully explained to him the danger of such conduct; that the evidence shows James to have been a bright, intelligent boy of thirteen years of age who must have understood these warnings and appreciated the danger of violating his father's instructions; that when James was riding his bicycle while holding onto the truck he knew that the act was dangerous and that he was in danger of being injured; that therefore James was negligent and that such negligence contributed to his injuries and death.

For the purpose of this opinion we will assume without holding that all of the foregoing argument is sound except the conclusion that the negligence of James contributed to his injuries and death. Thus we have assumed that James was negligent in holding onto the truck while riding his bicycle. The result of this negligence was his fall, which left him in the dirt portion of the road seven feet from the pavement and well out of the path of defendant's car. If defendant had kept on his course he could not have injured James. He did not keep on his course but turned his car to his right and ran over James who was not in a position of danger until defendant changed his course and headed his car for the boy. Thus we have an independent, efficient, intervening act of negligence on the part of defendant which the trial court concluded was the proximate cause of the injury to which the prior negligence of James did not contribute.

Whether the negligence of a person injured by an automobile contributed to the injuries is usually a question of fact for the trial court or jury. (*Skaggs* v. *Wiley*, 108 Cal. App. 429 [292 Pac. 132]; *Benjamin* v. *Noonan*, 207 Cal. 279 [277 Pac. 1045]; *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]; *Lindenbaum* v. *Barbour*, 213 Cal. 277 [2 Pac. (2d) 161]; *Gomez* v. *Lindberg*, 11 Cal. App. (2d) 730 [54 Pac. (2d) 1153].) Under the facts before us this should be particularly true. It follows that the trial court was justified in concluding that any negligence of James in holding onto the truck when riding his bicycle did not contribute to his injury by defendant. This portion of the finding absolving James from contributory negligence, being supported by the evidence, is sufficient to sustain the judgment. The finding that James was not guilty of negligence,

being unnecessary to support the judgment, may be disregarded by us.

Defendant complains of rulings of the trial court in sustaining plaintiff's objections to questions whose purpose was to develop the fact that James understood and appreciated his father's warnings of the danger of holding onto motor vehicles when riding his bicycle. If we assume that these rulings were erroneous they furnish no ground for reversal of the judgment. We have studied the record and have concluded that it shows without question that James had sufficient intelligence and mental development so that he understood these warnings. Therefore, there could be no prejudice in the error, if one were committed.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.